## COURT OF APPEALS, JUNE TERM, 1821.

### FERRIS vs. WALSH.

APPEAL from *Baltimore* county court. This was an ac-
tion of *assumpsit*; and the declaration contained counts for
work and labour, the common money counts, and a count
on an *insimul computassent*. The general issue was plead-
ed. At the trial below, the plaintiff (now appellant,) gave
in evidence, that on the 12th of March 1816, an account
was stated and agreed to between the plaintiff and defen-
dant, stating the nett proceeds on the sales of four hogs-
heads of tobacco, sold by the plaintiff for the defendant in
*New York*, to be $423 74, and charging the defendant
with goods per invoice, and crediting the sales on the to-
bacco due the 6th of May 1816, and $25 cash received;
making a balance due to the defendant of $118 39. The
four hogsheads of tobacco mentioned in the account, were
sold by the plaintiff, as a commission merchant, for the de-
fendant, to *J.* and *J. P. Foote*, on the 6th of January 1816,
on a credit of four months, for which they gave their pro-
missory note payable to the plaintiff or order. He further
gave in evidence, that it is the custom of commission mer-
chants, when they sell goods on a credit, and take notes
from the purchasers, to give their principals or consignees
credit for the amount of the notes, after deducting the
commission for selling; and other expenses; and in case
the purchaser fails, and the notes are not paid at their ma-
turity, to debit their employer with so much of the debt as
is lost. That the ordinary commission for selling tobacco
in *New York*, is two and an half per cent. That J. and
*J. P. Foote* failed in business about the 9th of May 1816,
the time when their note became due, and no part of it was
paid to the plaintiff. That the defendant, on the 5th of
March 1816, wrote a letter to the plaintiff, in which he
says, "I am desirous of realizing the small balance in your
hands to obtain the present favourable rate of exchange on
*New York*, and for that purpose I wish you to state in re-
ply, what you will charge for guarantee and discount on

---

*Whether the plaintiff made a contract to guarantee the payment of money due from F. to the defendant, must depend upon the letters and written evidence in the cause, and is a question of law to be decided by the court.*

*Where A had sold tobacco for B to F, on a credit, and taken his note therefor, B, desirous of realizing the money due from F, addressed a letter to A, requesting him to state upon what terms he will guarantee the proceeds of his tobacco, and to say for what sum he might draw, if those terms were accepted by him, A, in answer, states the amount due to B, and authorises him to draw for that amount after deducting interest with 9 per. ct. exchange on a part thereof, making no mention of the subject of guarantee. B makes the deductions, and draws on A for the balance, which was paid by A. C, having failed, no part of his note, when it became due, was paid; and in an action by A to recover from B the money paid on B's draft—Held, that A contracted with B to guarantee the payment of the money due from F for the tobacco sold.*

the proceedings of my tobacco, and the amount for which
I might draw, in case the terms offered are accepted." On,
the receipt of this letter, the plaintiff stated the account
herein before set forth, and at the same time addressed a,
letter to the defendant, dated the 12th of March 1816, in-
forming him that he had, made up his account, and that
there appeared a balance in his favour of $118 39, and
for which sum he might draw on him, deducting the inte-
rest for the probable time he might pay it, together with
nine per cent exchange on $25. The defendant, in an-
swer to this letter, wrote to the plaintiff on the 17th of
March 1816, stating that he thought he was a little hard on
him to require nine per cent deduction, on the $25, espe-
cially as he ought to have some commission for the ad-
vance, and could not possibly get more than eight per cent.
However, as the matter was small, and he thought he was
entitled to some difference in the money, and interest on
the balance to the 11th of May, he had drawn a bill for
$116, which allowed $2 39 for those purposes. The de-
fendant at the same time drew a bill on the plaintiff in fa-
vour of J. M. or order, for $116 at one day's sight, which
the plaintiff paid. The plaintiff again wrote a letter to the
defendant, on the 10th of May 1816, informing him of the
stoppage of Messrs. *Foote*, to whom the defendant's tobacco
was sold, and that their note remained in bank unpaid; and on,
his calling on them, they stated their stoppage to be merely
temporary, and that they would be able to pay all their credi-
tors. In this letter he asks, "will you remit me the amount,
of the note, or would you prefer my drawing on you at a few
days sight? Be pleased to let me know." To which the
defendant, on the 18th of May 1816, replied, "Since my
letter of 5th March, and your reply thereto, I have not con-
sidered myself as interested in the tobacco sales. You never
apprised me to whom my tobacco was sold, that I could
judge and act for myself; and my letter of the 5th March
was expressly written to realize the same without further
risk, and I therein asked you what you would allow me to
draw for guarantee, interest, &c. included. You replied
$118 39, including nine per cent on $25. From that day
I considered all accounts closed between us conclusively.
However, as you expect those men will pay, this subject
can be discussed when your actual loss is known." The
plaintiff also gave in evidence, that no guarantee commis-

June 1821.
Ferris
vs
Walsh

sion was charged by him to the defendant. The defendant then moved the court to direct the jury, that if they believe the facts so admitted, and given in evidence, that the plaintiff is not entitled to recover. Which opinion and direction the court, [*Dorsey*, Ch. J. and *Ward*, A. J.] gave to the jury. The plaintiff excepted, and the verdict and judgment being against him, he appealed to this court.

The cause was argued before Chase, Ch. J. Buchanan, Earle, Johnson and Martin, J.

*Raymond*, for the appellant, contended—1. That as there was evidence applicable to the issue before the jury, it was not competent for the court to withdraw the question of fact from the jury; and the court having done so in point of fact by their instruction, it was error. 2. That admitting the court had a right to decide the question of fact upon the evidence, or what was equivalent to doing so, to instruct the jury how they must find their verdict, the court erred in deciding the question of fact; and that upon the evidence in the record, the verdict ought to have been in favour of the plaintiff. On the *first point* he cited 1 *Phill. Evid.* 13; and on the *second point* he cited 2 *Esp. Dig.* 590.

*Winder* argued for the appellee.

Martin, J. delivered the opinion of the court. Two questions are presented for the consideration of the court in this case:

1st. Whether it was the province of the court, or of the jury, to decide on the liability of the plaintiff to pay the money due from *J.* and *J. P. Foote* to the defendant? And 2d. If the construction given to the contract by the court be correct?

Whether the plaintiff made a contract to guarantee the payment of the money due from Messrs. *Foote*, for the tobacco sold to them on account of *Walsh*, must depend upon the letters and written evidence in the cause, and is a question of law to be decided by the court, and not a fact to be submitted to the jury. This doctrine is too well established, both by authority and universal practice, to admit of doubt. A similar question was decided in the case of *Macbeath* against *Haldimand*, in 1 *Term. Rep.* 180, where Lord *Mansfield* observes, "It was objected,

whether the defendant had made himself liable or not was
a question which ought to have been left to the jury to de-
cide.    But there was no evidence which was proper for
their consideration; for the evidence, consisting altogether
of written documents and letters, which were not denied,
the *import* of them was matter of law and not of fact."

  To form an opinion upon the second question, a refer-
ence to some part of the testimony in the record will be
necessary to show the situation of the parties at the time
their correspondence by letters commenced.   *Ferris* was
a commission merchant in *New-York*, and *Walsh* acted
in the same capacity in *Baltimore*.   In October 1815,
*Walsh* was indebted to *Ferris* for a quantity of cheese sold
by him on account of *Ferris*, and in January 1816, *Ferris*
sold for *Walsh* four hogsheads of tobacco, to Messrs. *J.*
and *J. P. Foote*, on a credit of four months.   There be-
ing unliquidated accounts between the parties, and the
note given by Messrs. *Foote* not having arrived at maturi-
ty, on the fifth of March 1816 *Walsh* addressed a letter,
to *Ferris*, in which he expresses a desire to realize the ba-
lance due him in the hands of *Ferris*, and to obtain a
guarantee of the payment of the money still due from the
Messrs. *Foote*.   He begs *Ferris* to state upon what terms
he will guarantee the proceeds of his tobacco, and con-
cludes by requesting, if *Ferris* will guarantee the debt,
he will say upon what terms, and for what amount *Walsh*
might draw, if those terms were accepted by him.   On the
12th of March following, an answer is sent by *Ferris* to
this letter, in which he states the balance due to *Walsh* to
be $118 39, and authorises him to draw for the amount
due, after deducting the interest from the probable time he
might pay it, with nine per cent exchange on the sum of $25,
that *Walsh* had advanced for him; although *Ferris* does not
mention the subject of guarantee, he assents to the proposi-
tion contained in *Walsh's* letter, states the terms on which
he did assent to them, and directs *Walsh* to draw for the ba-
lance, after deducting the interest and exchange; thus af-
fording the specific evidence required by *Walsh*, if the
proposition made by him should be accepted by *Ferris*.
The terms of the contract being thus understood by both
parties, *Walsh*, on the 16th of March, drew a bill of ex-
change on *Ferris* for $116, the amount due him after de-
ducting the interest and exchange, as stated in the letter.

June 1821. of *Ferris*, and *Ferris* honoured the bill. The guarantee of *Foote's* debt constituted an essential part of the proposed contract in *Walsh's* letter, it was assented to by *Ferris*, and the payment of the bill of exchange consummated the contract. The court are therefore of opinion, that the construction given to those letters by the court below is correct, and their judgment is affirmed.

CHASE, Ch. J. dissented.

JUDGMENT AFFIRMED.