(Decided 28th January, 1880.)

## The Equitable Life Assurance Society of the United States *vs.* Charles Poe.

*Authority of a Special Agent to bind the Principal—Construction of a Written Authority.*

In the case of a special agent, the principal cannot be bound without or beyond the authority delegated by him; and if an agent be acting under such special authority, whether written or verbal, the party dealing with him is bound, at his peril, to inquire into the nature and extent of the agent's authority, and to understand the legal effect of it, for if he fails to inform himself as to the nature and extent of that authority, and it be exceeded by the agent, he must abide the consequences; the principal will be in no manner bound.

Where the authority in question is written, the power of the agent and the rights of the party dealing with him, as against the principal, depends upon the legal construction of the written authority under which it is claimed the agent acted; and the construction of the letter of authority is exclusively for the Court.

Appeal from the Baltimore City Court.

On the 26th April, 1877, the appellant obtained judgment for the sum of $943.33, in the Superior Court of Bal-

timore City, against John M. Miller, of that city, as surety
on the bond of John A. Busk, a former agent of the appel-
lant. In the procuring of that judgment, Mr. E. J. D. Cross,
who had been for some time the regular counsel, in Balti-
more, of the appellant, acted as its attorney. In Septem-
ber, 1878, the judgment against Miller had not been satis-
fied, though three attachments (two of which were then
pending) and one *fieri facias* had been issued.

In January, 1876, John M. Miller had executed to
Robert Moore a deed upon certain trusts, therein specified,
of property in which he had an interest under his father's
will. In the latter part of September, 1878, Richard H.
Mitchell, who was a special agent, in Baltimore, of the
appellant to effect insurances on lives for that society, and
who owned one-third of the judgment against Miller,
called on the appellee, an attorney at law in Baltimore,
and showed him an extract from the deed mentioned, and
further explained what the deed contained. The appellee
said, if the deed was so it was, in his opinion, void, and
that he thought the judgment against Miller could be
made ; whereupon Mitchell asked the appellee whether he
would undertake to collect the judgment for a contingent
fee of 40 per cent.; and he further informed the appellee,
on inquiry to that effect, that the connection of Mr. Cross
with the case had ceased and that his fees had been paid.
The appellee, however, being doubtful of Mitchell's au-
thority to employ him as attorney, requested him to write
and get authority to employ him direct from the society.
The letters which passed between Mitchell and the society
are stated in the opinion of the Court. The appellant
having decided that its agent, Mitchell, had exceeded his
instructions, and that Mr. Cross should continue to repre-
sent the society in the matter in question, Mr. Poe, who,
acting upon the supposition that Mitchell had got the
requisite authority, had already begun proceedings in
equity on behalf of the society, to have the deed afore-

mentioned set aside, brought suit against the appellant for breach of contract, to recover the contingent fee of 40 *per cent.*

*Exception.*—At the trial, the plaintiff prayed the Court to instruct the jury:

That the deed executed by John M. Miller to Robert Moore, in trust, bearing date the 4th January, 1876, and read in evidence, was fraudulent and void on its face as against creditors of said Miller, existing at the time of its execution.

The defendant offered thirteen prayers, of which it is necessary to set out only the fifth:

That the only authority of R. H. Mitchell to employ the plaintiff, was that given by the letters of the 15th and 18th October, 1878, offered in evidence, and the said Mitchell was only authorized to employ the plaintiff on the terms therein stated, and that the plaintiff has offered no evidence that he was employed by said Mitchell in accordance with said terms, and that, therefore, the plaintiff is not entitled to recover.

The Court (GAREY, J.) granted the plaintiff's prayer, and rejected all the prayers of the defendant. The verdict and judgment, for $264.00 and costs, being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*W. Irvine Cross* and *John K. Cowen* for the appellant.

The appellee's dealing with Mitchell should have been governed by the rule, that he who deals with a special agent must know what his authority is, and is charged with that knowledge. *Wharton on Agency,* 121, 227, 137–8–9; *Story on Agency,* 126, 132–3; *Chitty on Contracts,* 200; *Paley on Agency,* 201, 202; *Mayor, &c., of Baltimore vs. Reynolds,* 20 *Md.,* 1.

And by a corollary to this rule, when the appointment is by a written instrument, any one dealing with the agent must examine that paper, and will be charged with knowledge of all it contains. *Story on Agency, secs.* 72, 74, 75; *Wharton on Agency,* 227, 247; *Towle vs. Leavitt,* 3 *Foster,* 360; *Wharton on Negligence,* 300; *Schimmelpennick vs. Bayard,* 1 *Pet.,* 264, 290; *White vs. Davidson,* 8 *Md.,* 187; *Brown vs. McGraw,* 14 *Peters,* 479, 473, 474.

If Poe acted before Mitchell had any authority, he took the risk of any conditions that might be imposed upon him. And if, after Mitchell told him that he had a written authority, he acted without first examining it, he is charged with full knowledge of all that it contains.

A contract to try a case for a part of the amount recovered, is in itself illegal, and there is an additional illegal element in a contract in which a client stipulates that his costs shall be paid for him. *Lathrop vs. Amherst Bank,* 9 *Metcalf,* 489; *Thurston vs. Percival,* 1 *Pickering,* 415; *Martin vs. Clarke,* 8 *R. I.,* 389; *Arden vs. Patterson,* 5 *Johns. Ch.,* 44, 48, 50; *Berrien vs. McLane,* 1 *Hoffman's Ch.,* 421; *Rust vs. La Rue,* 4 *Litt. (Ky.,)* 412, 425, 427; *Gregerson vs. Imlay,* 4 *Blatch.,* 503; 13 *Ohio,* 167; *Holloway vs. Lowe,* 7 *Porter, (Ala.,)* 488; *Elliott vs. McClelland,* 17 *Ala.,* 206; *Small vs. Mott,* 23 *Wendell,* 403; 10 *Paige,* 352; 3 *Rev. Stat. N. Y,* 449, § 71–74;

*John P. Poe,* for the appellee.

The plaintiff's prayer was properly granted, and the appellant's prayers were all properly rejected. *Bump on Fraudulent Conveyances,* 318; *May on Fraud, Alienation,* 65, 93, 520; *Brinton vs. Hook,* 3 *Md. Ch. Dec.,* 477.

The validity of bargains for contingent fees is too well settled now to be seriously questioned. *Howard vs. Carpenter,* 22 *Md.,* 26; *Schaferman vs. O'Brien,* 28 *Md.,* 573–4; *Cain vs. Warford,* 33 *Md.,* 35–36; *Marshall & Fisher, vs. Cooper,* 43 *Md.,* 46; *Wylie vs. Cox,* 15 *How.,* 415–420;

*In re Paschal,* 10 *Wallace,* 488–496; *Wright vs. Tebbetts,* 1 *Otto,* 252; *Stanton vs. Embrey,* 3 *Otto,* 556; *Trist vs. Child,* 21 *Wall.,* 441.

The appellee instituted proceedings before the letter of the 18th October was received by Mitchell, but upon the assurance of the latter that he had authority. The letter, if our construction of it be correct, ratified Mitchell's act, and thus rendered binding on the appellant the contract previously made by him with the appellee. *Maddox vs. Bevan,* 39 *Md.,* 493, 497; *Roberts vs. Graham,* 6 *Wall.,* 578.

ALVEY, J., delivered the opinion of the Court.

Assuming without deciding the contract sued on to be one that could be enforced, if made upon competent authority, the case turns upon the question whether the agent with whom the plaintiff dealt had authority from the defendants to employ the plaintiff upon the terms alleged, and as disclosed in proof.

It is clearly shown by the plaintiff himself that R. H. Mitchell possessed no general power as agent of the defendants to employ counsel to prosecute legal proceedings for them. Mitchell was, at the time of the alleged employment of the plaintiff, only a special agent of the defendants to effect insurance on lives; and when the subject of the employment was first broached to the plaintiff by Mitchell, the former appears to have understood the necessity of first having special authority from the defendants, for he expressly says he was doubtful of Mitchell's authority, and he therefore requested him to write and get authority from the defendants for the proposed employment. Sometime thereafter Mitchell did write, and the whole evidence of authority from the defendants for the employment of the ·plaintiff to take legal proceedings in their name, is contained in the letter of Mitchell to the Vice-President of the defendants, dated the 15th of October, 1878, and

the reply thereto of Halsted, the auditor of the defendants, of the 18th of Oct. 1878. In the first of these letters, after referring to the judgment against Miller and the failure of previous efforts to realize the money on it, Mitchell says: " Now, if you will allow me to manage the matter for you, I will employ a young lawyer, who is energetic and smart, who will undertake to make the money for you on a contingent of 40 per cent. and he will at the same time take a policy on his life in our company for ten thousand dollars. Give me the authority to employ him, and you will get sixty cents on the dollar, with interest, and a policy for $10,000 at the same time." In reply to this letter the defendants, by their auditor, said, "we approve of the proposition offered, it being understood that no additional Court fees or charges of any nature are to be met by us, but that 40 per cent. of the amount collected is to go to the lawyer for his services. As you mention no amount which it is thought can be recovered, we should like to know about what can be expected before a final closing; and before taking such steps should like you to obtain the consent of Mr. Cross to move in the way suggested by you, as such a course will prevent any unpleasant feeling on the part of Mr. C., should he hear that another lawyer has the case in hand. You can arrange the preliminary matter in your own good way." These letters were produced in evidence by the plaintiff, and are the only evidence of the authority under which he claims to have been employed to take legal proceedings to recover the money due on the judgment against Miller, which was then in hands of Cross as the attorney of the defendants.

It appears the plaintiff, acting upon the supposition that Mitchell had written and obtained the authority from the defendants as requested, proceeded, on the 3rd of Oct., 1878, to file a bill in equity against the judgment debtor and others to vacate a deed of trust supposed to have been made in fraud of creditors; and that it was not

3

until his authority was called in question by Cross to take such proceeding, that the plaintiff discovered that no authority had been obtained until that given by the letter of the 18th of Oct., 1878. As the result of a contention between the plaintiff and Cross as to the power of the former to file the bill in equity, and a correspondence by both the plaintiff and Cross with the defendants upon the subject, the plaintiff was notified, by letter from the defendants, that Mitchell, the agent, had not observed his instructions contained in the letter to him of the 18th of October, 1878, and that the claim against Miller should remain in the hands and under the control of Cross, the original attorney. The bill filed by the plaintiff was never further prosecuted, and the claim was soon thereafter adjusted with Cross for seventy-five cents on the dollar. The plaintiff claims that he could have recovered the judgment in full, if he had been allowed to proceed with the bill filed by him, and he claims the forty per cent. of the amount due the defendants on the judgment as the consequence of having the proceedings taken out of his hands.

In this case, it being conceded that Mitchell was but a special agent, acting under special written instructions from his principal, none of the difficulties that frequently occur in drawing the line that separates the powers of a special agent from those of a general agent, can arise. In cases like the present, the power of the agent and the rights of the party dealing with him, as against the principal, depends upon the legal construction of the written authority under which it is claimed the agent acted; and it is settled, that the construction of the letter of authority is exclusively for the Court. *Ferris vs. Walsh,* 5 *H. & J.,* 306, 308. The authorities are numerous to the effect that, in the case of a special agent, the principal cannot be bound without or beyond the authority delegated by him; and if an agent be acting under such special authority, whether written or verbal, the party dealing with him is

bound, at his peril, to inquire into the nature and extent
of the agent's authority, and to understand the legal effect
of it; for if he fails to inform himself as to the nature and
extent of that authority, and it be exceeded by the agent,
he must abide the consequences; the principal will be in
no manner bound. 1 *Amer. Lead. Cas.*, (*3rd Ed.*,) *H. &
W's note, p.* 544, *and cases there cited; Sto. Ag.*, sec. 126;
*Paley Ag. by Lloyd,* 199; *Attwood vs. Munnings,* 7 *B. &
Cr.*, 278; *Scimmelpennich vs. Bayard,* 1 *Pet.*, 264, 289.

Now, with these well settled principles in mind, let us
examine the terms of the letters in which the authority is
supposed to be found for the employment of the plaintiff
on the terms alleged by him. The letter from Mitchell to
the defendants asked for the unqualified delegation of
authority to effect the employment, with the assurance
that the defendants would get sixty cents in the dollar on
their claim, and that the plaintiff would take a policy of
insurance on his life at the same time. The defendants
said in reply that they approved of the proposition made;
but, while approving the proposition, they did not accept
it without guards and conditions added. In the first
place, they desired it to be distinctly understood that they
were to be at no cost or charges on account of the proceed-
ing proposed, over and above the forty per cent. of the
claim to be collected. This proposition requiring the
plaintiff to assume the responsibility for the costs, was one
to which he, as an attorney, could not, of course, assent,
but he says he made no arrangement whatever in regard to
the costs; and although he could not assent to the proposi-
tion to become liable for the costs himself, yet he was put
to the alternative of either rejecting the proffered employ-
ment, or negotiating for a change in the terms contained
in the letter to Mitchell. But to this requirement in the
defendant's letter the plaintiff appears to have paid no
attention. In the next place, the defendants desired that
it should be expressly stated to them, what amount of the

judgment it was thought could be recovered.    This information might have been inferred from what was said in the letter from Mitchell; but the defendants desired not the mere opinion or assertion of their agent, but the information from the plaintiff himself, and this information they desired to have "before a final closing."    These terms of the letter of the 18th of October, 1878, would seem to have contemplated some further correspondence upon the subject before closing the arrangement with the plaintiff.    But the still more important condition imposed by this letter, was the getting the assent of Mr. Cross to the employment of the plaintiff and the proposed proceedings by him to make the money on the judgment.    The judgment against Miller had been recovered by Cross as the attorney of the defendants, and it was still in his hands for collection, and, moreover, he was the defendants' regular attorney in Baltimore.    Hence the defendants did not desire to take the judgment out of his hands without his consent, or to do any thing that would give him cause of offence.    They therefore desired that Mitchell should, before taking steps for the employment of the plaintiff, obtain the consent of Cross to move in the way that had been suggested.    Discretion was given Mitchell to arrange the *preliminary* matter in his own way; but the obvious construction of this is, that he was to use his good discretion as to the mode and manner of obtaining the consent of Cross, so as to avoid giving him cause of complaint.    That, by the very terms of the letter, was made preliminary to taking any steps in the matter; and an unqualified expression of a wish by the principal, under such circumstances, amounted to a positive command to or requirement of the agent.    *Marfield vs. Douglas,* 1 *Sanf. Sup. Ct. R.,* 360; *Sto. Ag.,* sec. 74.    But the consent of Cross was never obtained, or even applied for, as preliminary to employing the plaintiff; and it seems to have been one of the main grounds upon which the defendants disavowed the employ-

ment of the plaintiff, that Cross' consent was not first obtained as they had desired it should be. And as the plaintiff was bound to know the nature and extent of the special agent's authority, he could take no employment from such agent that was not within the terms of the authority prescribed by the principal; and therefore we can perceive no ground upon which the plaintiff can maintain his action against the defendants. The evidence fails to make a case for the consideration of the jury; and without review of all the prayers offered on the part of the defendants, which were rejected, we think the fifth of those prayers should have been granted, which would have required a verdict for the defendants.

There were other questions presented by the record and argued at the bar, but we have not deemed it necessary to pass upon those questions, and we intimate no opinion in regard to them.

Seeing that the plaintiff has no ground of action, we shall reverse the judgment without awarding a new trial.

*Judgment reversed.*

(Decided 28th January, 1880.)