# UNSATISFIED CLAIM AND JUDGMENT FUND
## BOARD ET AL. *v.* FORTNEY ET AL.

[No. 159, September Term, 1971.]

*Decided January 18, 1972.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Evan Crossley,* with whom were *Crossley, Latimer & Robinson* on the brief, for Mark J. Haselbauer, part of appellants. *Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* on the brief, for Unsatisfied Claim and Judgment Fund Board, other appellant.

*Ernest V. Wachs,* with whom were *Wachs & Kreykenbohm* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant Unsatisfied Claim and Judgment Fund Board (Board) complains because it was ordered to pay appellees, Frances M. Fortney et al., (Fortney) on a default judgment obtained against appellant Mark J. Haselbauer (Haselbauer) during the time that he was in the military service, without any attempt to comply with the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 520). Under Maryland Rule 871, we shall remand the case for further proceedings without affirmance or reversal.

Appellants raised three points, namely (1) whether oral notice to a representative of the company to whom the case had been assigned under Code (1970 Repl. Vol.) Art. 66½, § 7-607 (b) for investigation is the notice to the Board required by § 7-616 (a) (2); (2) whether an oral disclaimer of insurance coverage said to have

been given to Fortney's attorney on September 3, 1969, was sufficient to start the period of 30 days within which Fortney was required by § 7-606 to give notice to the Board of his intention to make a claim; and (3) whether the Soldiers' and Sailors' Civil Relief Act prevented the entry of a default judgment.

For the purposes of our decision, the facts are relatively simple. On May 21, 1967, Haselbauer, then 15 years of age, was involved in an accident in Washington County when a vehicle operated by him struck the car operated by appellee Frances M. Fortney and owned by appellee Fortney Trailer Sales, Inc. The Haselbauer vehicle, allegedly used without permission of his parents, was furnished Haselbauer's father by the father's employer who leased it from the owner. It was impounded after the accident and released only when an insurance company stated that it was "assuming responsibility for the accident." The insurance company claims representative who signed that statement was transferred before any settlement was effected. A regional supervisor of that company said that on September 3, 1969, he advised counsel for Fortney at the office of the attorney that his company was denying coverage on the basis of unauthorized use of the vehicle. The attorney for Fortney was asked about this by the court. He replied:

> "Your Honor, the only time I heard that September 3 was when the petition was answered and when Mr. Crossley stood up and mentioned to the Court in his opening statement that date. If—I can guarantee, Your Honor, that if Mr. Lightner, on September 3 had told me formally that Aetna Casualty Company was denying coverage we would have filed our petition with the Uninsured Motorist Fund immediately. I am quite familiar with that Act."

On direct examination the record reads:

> "During this entire period of time I had a number of conversations with Mr. Lightner and

at no time did Mr. Lightner formally notify me that he was not going to cover this case. On January 9, 1970 I called Mr. Lightner on the telephone and I said, 'Mr. Lightner, did you or are you going to deny coverage on this case? We must have from you a formal letter of denial so that we have something to go on, and we can then put the Uninsured Motorist Fund on notice.' Mr. Lightner, in response to my request on January 9, said that he was not in a position to give me a letter denying coverage. He would have to check it out with his home office. I again called him on January 12, 1970 at which time Mr. Lightner said he had talked to his home office and his home office was formally denying coverage and he would write me accordingly. And, therefore, on January 13 Mr. Lightner did write me denying coverage, and we wish to have that letter entered into evidence, Your Honor.

(Letter from Mr. Lightner for Aetna Casualty Company entered into evidence as Plaintiff's Exhibit No. 2.)

"On receipt of that letter we put the Unsatisfied Claim and Judgment Fund Board on notice by registered mail, enclosing not only the Notice of Intention to make claim, but also a copy of the suit papers entered into this case, and notice was received by the Fund on January 15, 1970, the following day as evidenced by the card which is the usual card they send out and which we now wish to have in evidence as Plaintiff's Exhibit No. 3."

Suit was filed against Haselbauer on November 12, 1969. Service was made on the Secretary of State under the provisions of what was then Code (1967 Repl. Vol.) Art. 66½, § 115. An affidavit of compliance showing receipt of copy of suit papers by Haselbauer was filed

on November 19. The notice of intention to make claim against the Board was filed after the written disclaimer by the insurance company. It was received by the Board on January 15, 1970. Pursuant to the mandate of what is now Code (1970 Repl. Vol.) Art. 66½, § 7-606 (a) (4), this notice included copy of the suit papers previously filed.

On February 24, 1970, the Board assigned the claim "for investigation, handling and defense" to an insurance company under § 7-607 (b) which in turn assigned it to an adjusting organization. Contrary to what the Board describes as its usual policy, no defense counsel was assigned on behalf of Haselbauer until after the default judgment upon which we shall comment further.

At some time subsequent to the filing of suit Haselbauer entered the U. S. Marine Corps. It is said that the adjuster advised counsel for Fortney of a visit to Haselbauer at his training camp, "that he had advised Haselbauer he should contribute something," that Haselbauer "showed no interest whatsoever in paying a dime," but the insurance company representative promised to keep after him "to force him to contribute something." Counsel's exasperation at the passage of three years from accident and one year from his initial contact, with no money in hand, reached the point where he felt affirmative action necessary. He described what then took place:

> "Finally I told Mr. Schultz, [the representative of the insurance company to which the Board assigned the case], and this was sometime in May of 1970, that we had reached the point where we could not wait any longer; that we had been trying to work out something on this case for months without any indication of any interest on the part of anybody involved, and that we had no choice but to go ahead and obtain a judgment by default, and he said, 'I don't blame you a bit, and if I were you I would go ahead', or words to that effect, and I said, 'Well, we're just

going to have to do it, we just don't have any choice.' We then obtained a judgment by default. On June 11, 1970. I think that is the date in the papers in front of you, Your Honor. And on that date we notified Haselbauer by registered mail that such a judgment had been obtained, and I will quote a letter to Mr. Haselbauer, Your Honor. The letter is dated June 11, 1970, registered mail, return receipt requested addressed to Mark J. Haselbauer, U. S. Marine Corps, Parris Island, South Carolina. 'Dear Sir, Please be advised that a judgment by default was obtained against you in this case in the Circuit Court for Washington County on June 11, 1970 with leave to extend. A hearing is scheduled for June 23, 1970 to determine the extent of plaintiff's damages. You have a right to be present in Court in person or by counsel if you desire to do so. Yours very truly.'

"We got no reaction whatsoever from Mr. Haselbauer—Private Haselbauer at that point, and therefore on the date mentioned, on June 25, 1970, we did obtain our judgment. We waited until the judgment became final and we notified the Fund.

"Subsequently we received a letter from Mr. McGee, the General Counsel of the Fund, dated August 14, 1970, and I ask the Court to note in the letter from Mr. McGee, who is the General Counsel of the Fund, none of the issues raised in the petition subsequently filed in this case, are even mentioned, and I ask that this be entered into evidence as Plaintiff's Exhibit No. 4."

No affidavit relative to military service was filed nor was any other action taken as required by the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 520) prior to entry of the judgment. When

Fortney filed a petition on September 2, 1970, for payment from the Board an answer was filed on behalf of the Board and Haselbauer in which they objected because of what they called a failure to file notice of intention to make a claim within the required period after disclaimer and the failure to comply with the requirement of notifying the Board prior to taking a default judgment, pointed to the absence of Haselbauer in the military service, claimed that investigation on behalf of the Board "could not be completed because of military service of the defendant", and requested that the default judgment be stricken. After testimony was taken, the trial judge directed payment by the Board.

## SOLDIERS' AND SAILORS' CIVIL RELIEF ACT

The judge below said of this act that it "was enacted for the benefit of soldiers and sailors, not for the benefit of the Board, and has no application under the facts of this case." The Board argues that because of that act the judgment should be stricken. It does not appear that any evidence was presented to the court in an effort to show that Haselbauer was prejudiced in the defense of the action by his military service nor to show a meritorious defense.

The trial judge erred in concluding that the issue of Haselbauer's military service had no bearing on the judgment. Counsel for the Board entered an appearance and signed on behalf of Haselbauer when he prayed that the judgment be stricken. Under § 7-608 the insurer to whom an action has been assigned is permitted by its attorney to "enter an appearance on behalf of the defendant, file a defense, appear at the trial or take such other steps as it may deem appropriate on the behalf and in the name of the defendant" and the statute further provides "all such acts shall be deemed to be the acts of the defendant." Section 7-617 provides:

"When the Board receives notice, as provided in § 7-616 [relative to default judgment], the in-

surer to which the action has been assigned through counsel may enter an appearance, file an answer, appear at the trial, defend the action or take such other action as it deems appropriate on the behalf and in the name of the defendant, and take recourse to any appropriate method of review on behalf of, and in the name of, the defendant."

Under § 7-619 a prerequisite to payment of this judgment will be assignment of it by Fortney to the Board. The Board will then have all the rights of the judgment creditor under the judgment and be entitled to enforce the same. *Maddox v. Shanks,* 240 Md. 348, 351, 214 A. 2d 323 (1965). Haselbauer's right to operate a motor vehicle in Maryland then will be suspended. Code (1970 Repl. Vol.) Art. 66½, § 7-310. The suspension will continue until the judgment is stayed or satisfied. Section 7-314.

Judgments are not necessarily void because there has been no affidavit of nonmilitary service before they were entered. *Kimbrough and Glen, American Law of Veterans* (Shipley 1954) § 875. Judgments thus obtained are voidable. *Rentfrow v. Wilson,* 213 A. 2d 295 (D.C. Ct. App. 1965); *Thompson v. Lowman,* 108 Ohio App. 453, 155 N.E.2d 258 (1958); *People v. Vogel,* 46 Cal. 2d 798, 299 P. 2d 850 (1956); *Allen v. Allen,* 30 Cal. 2d 433, 182 P. 2d 551 (1947); Department of the Army Pamphlet No. 27-166 *Soldiers' and Sailors' Civil Relief Act* § 3.2 (a) (4) (July 1971); and annotation "Soldiers' and Sailors' Civil Relief Act of 1940, as amended, as affecting matrimonial actions," 54 A.L.R.2d 390, 394 (1957). See also annotation "Soldiers' and Sailors' Civil Relief Act of 1940, as amended, as affecting negligence actions," 75 A.L.R.2d 1062 (1961), and the series of annotations relative to the Soldiers' and Sailors' Civil Relief Act in 130 A.L.R. 774 and thence beginning at 147 A.L.R. 1366 and continuing through each volume of A.L.R. to 157 A.L.R. 1454. "[T]he failure to file the affidavit is only

an irregularity and does not affect a default judgment rendered in such cause, since a default judgment rendered without the filing of such affidavit is voidable only, at the instance of the serviceman defendant, upon proper showing that he has been prejudiced in making his defense by reason of his military service." 54 Am. Jur. 2d *Military, and Civil Defense* § 344 (1971).

A judgment entered against a person in the military service during the period of his service or within 30 days thereafter may be reopened upon his application or the application made by "his legal representative" at a time "not later than ninety days after the termination of such service" if "it appears that such person was prejudiced by reason of his military service in making his defense thereto" and if "it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof." 50 U.S.C. App. § 520 (4).

Since it appears that this point was not considered below, an opportunity should be afforded to the defendant upon the remand to show whether he was prejudiced by reason of his military service and whether he in fact has a meritorious or legal defense to the action. The case is remanded without affirmance or reversal for further proceedings for that purpose. The Board will then be in a somewhat anomalous position since we conclude that for reasons we shall set forth the Board will not otherwise be obliged to pay if the judgment is not stricken. Yet, as said by the Court in *Allied American Co. v. Comm'r*, 219 Md. 607, 613, 150 A. 2d 421 (1959), "the defendant [will be] represented, and the fund defended, by counsel selected by the insurer to whom the claim has been assigned." This will mean that control of that phase of the proceeding really will rest with the Board. Therefore, to avoid such conflict Fortney may wish to consent to a striking out of the judgment, thereby letting the parties start afresh.

## DISCLAIMER

The insurance company said it disclaimed orally in

September. Counsel for Fortney said it did not, that its letter in January was the first knowledge he had of any disclaimer. We are not obliged for the purpose of this opinion to determine whether the oral disclaimer could be a valid disclaimer, since the court, as the trier of facts, found that the disclaimer came when the formal written disclaimer was given on January 13, 1970. This was a matter clearly for the trier of facts and under Maryland Rule 886 "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." We cannot say in this instance that the trial judge's conclusion was clearly erroneous.

### NOTICE TO BOARD PRIOR TO DEFAULT JUDGMENT

The trial judge commented that the unrebutted evidence showed that Fortney's attorney informed the adjuster in May "that he would enter a default judgment soon" and that the adjuster said "go ahead, I don't know what else you can do." He then said:

> "The Board argues that this was not 'notice to the Board'. The plaintiffs argue that this is simply a case of notice to an agent being notice to the principal. The Court agrees. Since January 15, 1970 the case had been assigned to General Adjustment Bureau. The Court sees no reason not to apply the ordinary law of principal and agent."

"The ordinary law of principal and agent" is that knowledge of the agent is knowledge of the principal. *Boring v. Jungers,* 222 Md. 458, 463, 160 A. 2d 780 (1960). However, to be binding, notice must be to a person who "has actual or apparent authority to receive it." 3 *Merrill on Notice* § 1291 (1952) and 2 *Mechem on Agency* § 1803 (2d ed. 1914), citing *Md. Trust Co. v. Mechanics Bank,* 102 Md. 608, 63 A. 70 (1906). The

principal is affected by the agent's knowledge, only if the agent in failing to impart the knowledge has failed to act properly within the scope of his authority. *Schmidt v. Millhauser*, 212 Md. 585, 594, 130 A. 2d 572 (1957). See also *Airway Branches, Inc. v. Board of Review, etc.*, 10 N. J. 609, 92 A. 2d 771 (1952) ; and *Rooney v. Ludlow Mfg. & Sales Social & Athletic Club, Inc.*, 330 Mass. 340, 113 N.E.2d 838 (1953), which are somewhat similar to this case.

In *Airway* a notice under the New Jersey unemployment compensation law was mailed to a warehouse of the employer, which was the address given by the employee as the address of his employer when he applied for benefits. Testimony showed that this warehouse was under the control of a division manager who had no authority in unemployment compensation matters and that all other communications from the Division of Employment Security had been directed to the home office of the employer in Toledo, Ohio. The Supreme Court of New Jersey held this notice insufficient.

In *Rooney* the plaintiff, a business invitee of the defendant, was injured when he slipped and fell by reason of an accumulation of snow and ice on a stairway on the defendant's premises. In order for the plaintiff to recover, he was required under the applicable statute to give the defendant a written notice of the time, place, and cause of the injury within 30 days after the injury. Nine days after the accident an investigator for the insurance company which had in force a general liability insurance policy covering the defendant's premises called on the plaintiff and obtained from him a written statement setting forth the details of the accident. There was no evidence that the defendant had any knowledge that the agent would contact the plaintiff or take a written statement from him. There was no evidence that the statement was ever given by the insurance company to the defendant. There was no writing other than that statement given by the plaintiff to the defendant within

the statutory period. The giving of the statement to the insurance representative was held not to be compliance with the statute.

Citing *Myers v. Cave*, 55 N. J. Super. 185, 150 A. 2d 269 (1959), 7 *Blashfield Automobile Law and Practice* (3d ed. Lewis 1966) § 274.12 at page 85 states concerning a notice provision in an unsatisfied claim and judgment law such as we have here:

> "The statutory requirement of notice of default can be invoked by the state indemnity board although the board or its assigned insurance company had notice of the suit and relied on defendant's personal counsel to defend the case up to the time of entry of the default judgment."

In *Myers* the court said:

> "The disputed question is whether the judgments were recovered under circumstances which constitute them judgments 'which were entered by default' without prior notice to the Board, within the intendment of N.J.S.A. 39:6-74, L.1952, c. 174, § 14, so as to entitle the Board to have them reopened and to resist the underlying claims by use of any of the remedies specified for that purpose in N.J.S.A. 39:6-75, L.1952, c. 174, § 15." *Id.* at 190.

The case was assigned to an insurance company for defense. Relying on the fact that the defendant was being represented by his own counsel, the Board and the insurance company paid no further attention to the case until the later events which were brought to their attention. A pretrial conference was held at which counsel for the defendants did not appear. The case was set for trial and then adjourned at the request of counsel for the defendant. It was then set peremptorily for trial. As the court put it:

> "On the morning of that day counsel for de-

fendants telephoned plaintiffs' trial counsel to say that defendants would not appear to defend. Plaintiffs' counsel had already arranged for their parties and witnesses to be in court. He telephoned the Zurich representatives that defendants were not going to defend. An affidavit by a Zurich representative states that plaintiffs' counsel said he would arrange for a continuance of the matter so that Zurich could defend for the Board, but that he failed to do so. Plaintiffs' counsel apprised the trial judge of the situation, but the latter ordered or suggested (it is not clear which) that he proceed with his proofs forthwith. He did so, and the judgments aforementioned were entered on the basis of plaintiffs' undefended proofs. There is nothing before us to indicate whether the judgments are excessive in any regard." *Id.* at 191.

On motion for payment counsel for the Board took the position that this was a judgment by default and that the Board had not been given adequate notice of intention by plaintiff to enter the default judgment. The court said:

"The plaintiffs contended, as they do here, that section 14 is not applicable to a case where the Board has assigned a claim to an insurer for defense after being served with a notice of intention to make a claim and with a copy of a complaint; that it was incumbent upon the Board's representatives, knowing of the pendency of the action, to keep themselves informed of the progress of the cause, as they could have done by filing an appearance in the matter on behalf of the Board; and that having chosen to rely upon defendants' personal counsel the Board could not reasonably expect to require plaintiffs to go to the trouble and expense of proving their case a second time when they had

no reason to anticipate in advance that defendants would not defend on the date set for trial." *Id* at 193.

The court held the judgment to be a default judgment without adequate prior notice to the Board.

Sections 7-616 and 7-617 of our law relative to default judgments are almost word for word copies of §§ 14 and 15 of the New Jersey act. The reason for the notice to the Board before a default judgment was summed up by the New Jersey Court in *Douglas v. Harris,* 35 N. J. 270, 173 A. 2d 1 (1961), when it said:

> "The notice of the intention to enter a final judgment by default required to be given by N.J.S.A. 39:6-74 is for the purpose, as exhibited by N.J.S.A. 36:6-75, of permitting the Fund, through counsel of the insurer to whom the action has been assigned, to participate in those proceedings in order to assure that only where the liability of defendant has been established shall a claim against the Fund be allowed and then only to the extent of plaintiff's actual damages." *Id* at 280.

If the authority of the agent is conferred on him by a written instrument, the construction of the instrument, and the determination of the nature and extent of the agent's power are matters of law for the court. *Groscup v. Downey,* 105 Md. 273, 278, 65 A. 930 (1907) ; *Equit. Life Assur. Soc. v. Poe,* 53 Md. 28, 34 (1880) ; *Ferris v. Walsh,* 5 H. & J. 306, 308 (1821).

Here the authority is a written instrument, the statute, § 7-607. The assignment to an insurer was "for the purpose of making investigation" and "for the purpose of conducting the defense," making it an agent for those purposes. The duty of an insurer is to "cause to be conducted on behalf of the fund the defense of any action assigned to it." An attorney assigned by an insurer to the defense of an uninsured motorist who entered his

appearance on behalf of such uninsured motorist would automatically be notified of all proceedings, and, therefore, before any default judgment. Notice to him as agent of the Board prior to entering a default judgment would be a superfluous act and there would be no purpose for providing such notice in the act. All parts of the statute must have been intended to have meaning, *St. Joseph Hospital v. Quinn,* 241 Md. 371, 379, 216 A. 2d 732 (1966), and must be so interpreted, *Rafferty v. Comptroller,* 228 Md. 153, 158, 178 A. 2d 896 (1962).

We construe the agency here to be one limited in scope, which did not include the right to receive notice of a default judgment. To hold otherwise would be to ignore the fact that the Board is vested with the responsibility, as the New Jersey court put it in *Douglas,* of seeing that funds are paid only "where the liability of the defendant has been established" and "then only to the extent of plaintiff's actual damages." It can only discharge that duty if it receives notice prior to a default judgment in which case § 7-617 then prescribes the procedures to be followed. Accordingly, we hold that notice to the adjuster did not constitute the notice to the Board prior to a default judgment required by § 7-616 (a) (2).

> *Remanded for further proceedings without affirmance or reversal, costs to abide the result.*