# BOSTON *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 129, September Term, 1973.]

*Decided January 11, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS,█ SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Bernard Brager* for appellant.

*K. King Burnett,* with whom were *Webb, Burnett &*

*Simpson, Francis B. Burch, Attorney General,* and *G. Raymond Valle, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

When the Circuit Court for Caroline County, Wise, J., denied the request of Camilla Victoria Boston, appellant, that it order the Unsatisfied Claim and Judgment Fund Board, appellee, to pay the uncollected portion of a judgment which she had obtained against an uninsured motorist, this appeal followed.

This litigation began in the spring of 1970 when the appellant instituted an action to recover damages she had incurred as a result of being hit, while walking across a street in Denton, Maryland, by a motor vehicle, owned and operated by the defendant, Nellie Mara White. What began as a pedestrian tort action, became in a measure complicated for Mrs. Boston when it appeared that the collection of any damage award might require invoking the benefits of Maryland's Unsatisfied Claim and Judgment Fund Law [1] since Mrs. White was an uninsured motorist. As it turns out, her lack of familiarity with all of the intricacies of that statute became appellant's Achilles' heel.

The appellant at first followed the correct statutory procedure when she sent to the Board, in compliance with Maryland Code (1957, 1970 Repl. Vol.), Art. $66^1/_2$, § 7-606(a), timely notice of the accident and of her intention to file a claim. Suit was then instituted and Mrs. White was served with process. When the defendant did not respond, the appellant obtained a default judgment against her on May 18, 1970. This was done, however, without giving notice to the Board of her intention to do so as required by § 7-616(a) (2) in order to qualify for the benefits of the Unsatisfied Claim and Judgment Fund Law. That section in pertinent part provides:

(a) *Requisites for allowance of claim founded on default judgment.* — No claim shall be allowed and

---

**1.** Maryland Code (1957, 1970 Repl. Vol.), Art. $66^1/_2$, §§ 7-601 *et seq.*

ordered to be paid out of the fund if the court finds, upon the hearing for the allowance of the claim, that it is founded upon a judgment which was entered by default unless—

\* \* \*

(2) Prior to the entry of the judgment the Board has been given notice of intention to enter the judgment and file a claim thereon against the fund and has been afforded an opportunity to take the action it deems advisable under § 7-617.

It was not until October 6, 1970 that the Board was eventually notified by appellant of the procured default judgment and the impending inquisition to assess damages which was scheduled for November 12, 1970. Upon receipt of this notice, the Board routinely set up a file and, pursuant to § 7-607(b), assigned the claim to the Government Employees Insurance Company (GEICO), for investigation and defense. Throughout the four week period prior to the inquisition date, the case file was in GEICO's possession and during that time it passed through the normal reviewing and investigating channels of that insurance company. And, it was only one day preceding the scheduled hearing to assess the damages that the claim was finally referred by GEICO to a lawyer. From his prompt review of the file, this attorney, K. King Burnett, became aware of the inquisition scheduled to be held that same day, and immediately telephoned Judge J. DeWeese Carter, who was then presiding in Caroline County, to seek a postponement. When the judge refused to grant that request, Mr. Burnett quickly drove approximately 50 miles from his office in Salisbury to the courthouse in Denton in order to attend the hearing. Despite his haste, the attorney arrived after the jury had been sworn. In this situation and with neither a defense prepared nor a defendant present, Mr. Burnett says he could do little more than sit by throughout the proceedings and observe the jury award Mrs. Boston $15,000 in damages. Upset by what had transpired, the defense counsel promptly filed a "motion to set aside judgment by default," a "motion

for new trial," and a "motion for remittitur," all of which were denied by Judge Carter.

The appellant then proceeded to collect $6,259.32 by executing on the judgment and then requested an order from the court directing the Board to pay the unsatisfied portion of her $15,000 award. This motion was considered by Judge James A. Wise who denied the request when he concluded that prior notice to the Board of an intention to obtain a judgment by default, as required by § 7-616(a) (2), is a condition precedent to procuring any payment from the fund, and, since this required notice was not given here, payment was thereby precluded. It is from this ruling that Mrs. Boston has appealed.

Now aware of this notice requirement, the appellant does not contend that she gave the Board prior notice of her intention to obtain judgment by default, nor does she ask us to overrule the language in *Unsat. C. & J. Fund Bd. v. Fortney*, 264 Md. 246, 285 A. 2d 641 (1972) which says that the Board "can only discharge [its] . . . duty [2] if it receives notice prior to a default judgment . . . ." *Id.* at 260. Instead Mrs. Boston argues that her failure to give notice under § 7-616(a) (2) was not fatal to her right to collect from the fund, as the Board, though afforded an opportunity, did not make timely application to vacate the judgment under § 7-617(b), which provides:

> (b) *Right of insurer after time allowed for answer has expired.* — If the time allowed for filing an answer has expired or judgment has been entered by default in the action, the insurer to which the action has been assigned shall be granted

---

**2.** This "duty" is defined in Code (1957, 1970 Repl. Vol.), Art. 66½, § 7-617(a) as follows:

(a) *Right of insurer when Board has received notice.* — When the Board receives notice, as provided in § 7-616, the insurer to which the action has been assigned through counsel may enter an appearance, file an answer, appear at the trial, defend the action or take such other action as it deems appropriate on the behalf and in the name of the defendant, and take recourse to any appropriate method of review on behalf of, and in the name of, the defendant.

a reasonable time after the receipt of notice by the Board to answer or to make application for relief against the judgment and leave to answer and defend the action.

In relying on this subsection, appellant urges that this is a statutory safety valve which provides the Board with a method by which it may obtain relief from a default judgment procured without notice to it. And, from this, Mrs. Boston contends that the failure here to employ this subsection's provisions within a "reasonable time"—the five weeks between notice of the default judgment on October 6, 1970 and the scheduled inquisition on November 12, 1970—now prohibits the Board from using the notice requirement of § 7-616(a) (2) to defeat a motion for payment.

As mentioned by the appellant, it is plain that the statute does provide the Board with an opportunity to obtain relief against a default judgment taken without its knowledge. However, we hold that this statute is permissive and therefore it is not mandatory that the Board correct the procedural flaws created by claimants. Nor in our opinion will the failure of the Board here to successfully utilize the provisions of § 7-617(b) prohibit it from invoking the notice requirement contained in § 7-616(a) (2) as a defense to a request for an order directing payment.

As a further contention, the appellant posits that even though she did not proceed as § 7-616(a) (2) requires, she is nevertheless rescued from the adverse effects of its violation, reasoning that the following communications to the Board made on her behalf prevent it from using her failure to give the required notice as a defense. On October 6, 1970, her attorney dispatched a letter to the Board in which, after informing it of the entry of the default judgment and the impending inquisition, he said:

I will not put you at a disadvantage because of the above events. However, I would suggest that you communicate with me as promptly as possible so that an amicable disposition can be reached in this matter.

Additionally, appellant points out that a few days before the inquisition hearing date, her attorney again contacted the Board and mentioned that he would be agreeable to a postponement of the hearing if the Board wished to make such a request of the court. In furtherance of her argument based on these communications, appellant relies heavily on the language of the Supreme Court of New Jersey in *Moore v. Truesdale,* 48 N. J. Super. 257, 262, 137 A. 2d 433 (1958), which reads:

> Relating to this wing of the actualities, the fact is that the plaintiff and his representatives omitted to notify the Board of the intention to enter the default judgment against the named defendants. We are informed in further explanation that to eradicate any consequential prejudice suffered by the Board from this nonobservance of the statute, the attorney for the plaintiff offered to re-open the default judgment and that the Board declined the offer, retaining its conviction that the plaintiff was unqualified and ineligible for beneficial aid from the Fund by reason of his initial failure to forewarn the Board of his intended application. In such circumstances, we do not ascribe distinct vitality to the dereliction in this particular.

We think that the instant case is distinguishable factually, as in *Moore* the plaintiff took the initiative by offering to request that the court reopen the default judgment, whereas in this case the appellant placed the onus to strike the default judgment on the Board. Considering this, without passing upon whether we would adopt the reasoning of the Supreme Court of New Jersey were we presented with the peculiar facts of *Moore,* we fail to see how that case aids Mrs. Boston's cause.

We conclude that the provisions of § 7-616(a) (2) requiring notice to the Board of intention to obtain a default judgment are mandatory, *Unsat. C. & J. Fund Bd. v. Fortney, supra,* and the only way the claimant can be saved from his own procedural bungle is for the default judgment to be stricken either through the claimant's efforts or through the

successful voluntary employment of § 7-617(b) by the Board. This holding is in line with our previous decisions interpreting the procedural requirements for filing a claim with the Board in which we have clearly said that, though as social legislation the Unsatisfied Claim and Judgment Fund Law should be liberally construed so as to advance the intended remedy, nevertheless, in order to further the efficient administration of the fund and insure its integrity, strict adherence to the notice provisions of this statute is a *sine qua non* to any collection from the fund. *D'Ambrogi v. Unsat. C. & J. Fund Bd.*, 269 Md. 198, 200, 305 A. 2d 136 (1973); *Rosenberg v. Manager, U. C. & J. F. Bd.*, 260 Md. 164, 168-69, 271 A. 2d 692 (1970); and cases cited in each.

*Judgment affirmed.*
*Costs to be paid by appellant.*