55 N.J. Super. 185 (1959)
150 A.2d 269
DONALD MYERS AND ANITA MYERS, PLAINTIFFS-RESPONDENTS,
v.
CHARLES CAVE, JR., A MINOR OVER THE AGE OF 14 YEARS, AND CHARLES CAVE, SR., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1959.
Decided April 13, 1959.
*189 Before Judges PRICE, CONFORD and GAULKIN.
Mr. Frank A. Paglianite argued the cause for defendants-appellants (Messrs. Gockeler and Cortese, attorneys).
Mr. Newton M. Roemer argued the cause for plaintiffs-respondents (Messrs. Gelman and Gelman and Mr. Archibald Kreiger, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The Unsatisfied Claim and Judgment Fund Board ("Board" hereinafter) appeals in the name of defendants from an order entered in the Passaic County District Court, over its objection, directing the State Treasurer to pay out of the Fund administered by the Board judgments separately recovered against defendants by the *190 male and female plaintiffs for $3,412.80 and $1,810, respectively, plus costs, and less the statutory deductions of $200 on each judgment. N.J.S.A. 39:6-61 et seq., 69; L. 1952, c. 174, § 9 (since reduced to $100, L. 1958, c. 99). The disputed question is whether the judgments were recovered under circumstances which constitute them judgments "which were entered by default" without prior notice to the Board, within the intendment of N.J.S.A. 39:6-74, L. 1952, c. 174, § 14, so as to entitle the Board to have them reopened and to resist the underlying claims by use of any of the remedies specified for that purpose in N.J.S.A. 39:6-75, L. 1952, c. 174, § 15.
Plaintiffs were injured June 30, 1957, while riding a motorcycle in the City of Paterson, as a result of a collision with an automobile then being operated by the defendant Cave, Sr., and said to have been owned by the defendant Cave, Jr. The consequent complaint filed in the Superior Court July 16, 1957 states that Cave, Sr. was operating the vehicle as agent of Cave, Jr., but no substantiation of that fact appears in the limited portion of the proceedings reflected in the appendix of appellants' brief. At the time of the accident Cave, Sr. was on the revoked drivers list.
The complaint in the action was served on the manager of the Board July 18, 1957 and at the same time a notice of intention to file a claim against the Board was served upon it, as required by N.J.S.A. 39:6-65, L. 1952, c. 174, § 5. Defendants personally engaged a lawyer, Andrew Pecora, to defend the action. He filed an answer on their behalf and participated in pretrial discovery proceedings. The Board assigned the action to Zurich Insurance Company ("Zurich" hereinafter) for defense August 5, 1957 and sent it a copy of the complaint. This was apparently done under N.J.S.A. 39:6-66, L. 1952, c. 174, § 6, which permits assignments to insurers for investigation or defense of all actions instituted after service of notice of claim on the Board (and requires assignments to insurers for *191 investigation and defense of all "default actions" described in section 14).
It appears that the Board and Zurich, relying on the fact that the defendants were being represented by their own counsel, paid no further attention to the case until the later events which were brought to their attention under the circumstances which are related hereinafter.
A pretrial conference was held January 29, 1958, at which counsel for defendants did not appear. The case was at that time transferred to the Passaic County District Court pursuant to R.R. 4:3-4. The case was set down for trial for May 13 to 15, 1958, but was adjourned at the request of counsel for defendants and set down peremptorily for trial June 12, 1958. On the morning of that day counsel for defendants telephoned plaintiffs' trial counsel to say that defendants would not appear to defend. Plaintiffs' counsel had already arranged for their parties and witnesses to be in court. He telephoned the Zurich representatives that defendants were not going to defend. An affidavit by a Zurich representative states that plaintiffs' counsel said he would arrange for a continuance of the matter so that Zurich could defend for the Board, but that he failed to do so. Plaintiffs' counsel apprised the trial judge of the situation, but the latter ordered or suggested (it is not clear which) that he proceed with his proofs forthwith. He did so, and the judgments aforementioned were entered on the basis of plaintiffs' undefended proofs. There is nothing before us to indicate whether the judgments are excessive in any regard.
On August 13, 1958 plaintiffs brought on by motion before the same judge who entered the judgments an application for an order that the Board pay the judgments. Affidavits were submitted showing satisfaction of all of the conditions prerequisite specified in sections 9, 10 and 11 of the act (N.J.S.A. 39:6-69, 70 and 71). At this hearing the Board was represented by counsel. He took the position that the judgments had been entered by default, within the meaning of section 14 of the act (N.J.S.A. 39:6-74), and *192 that since the Board had not been given adequate advance notice of intention by plaintiffs to enter them, a fact he offered to prove by witnesses, the order for payment by the Fund was not allowable under the statute. The Board did not claim, nor does it now, that the Fund is irremediably immune from subjection to plaintiffs' claim because of the failure of notice, but only that it is entitled to make the defense to the action on the merits which defendants failed to put forth at the trial.
Section 14 of the act reads as follows:
"No claim shall be allowed and ordered to be paid out of the fund if the court shall find, upon the hearing for the allowance of the claim, that it is founded upon a judgment which was entered by default unless (1) the claimant shall have complied with the requirements of section 5, and (2) prior to the entry of such judgment the board shall have been given notice of intention to enter the judgment and file a claim thereon against the fund and shall have been afforded an opportunity to take such action as it shall deem advisable under section 15.
If the court, upon a hearing for the allowance of any claim against the fund, finds that it was a claim which was not assigned by the board to an insurer in accordance with section 6, or that the action upon such claim was not fully and fairly defended, or that the judgment thereon was entered upon the consent or with the agreement of the defendant, the court shall allow such claim but shall order it to be paid only in such sum as the court shall determine to be justly due and payable out of the fund, on the basis of the actual amount of damages for which the defendant was liable to the plaintiff under the cause of action, upon which the judgment was rendered and reduced by any amount received from any person mentioned in subparagraph (m) of section 10, notwithstanding that the judgment is for a greater amount."
Section 15 is to the following effect:
"When the board receives notice, as provided in section fourteen, the insurer to which such action has been assigned may through counsel enter an appearance, file an answer, appear at the trial, defend the action or take such other action as it may deem appropriate on the behalf and in the name of the defendant, and take recourse to any appropriate method of review on behalf of, and in the name of, the defendant.
In event that the time allowed for filing an answer has expired or judgment has been entered by default in any such action, the insurer to which the action has been assigned shall be granted a *193 reasonable time after the receipt of notice by the board to answer or to make application for relief against the judgment and leave to answer and defend such action."
The plaintiffs contended, as they do here, that section 14 is not applicable to a case where the Board has assigned a claim to an insurer for defense after being served with a notice of intention to make a claim and with a copy of a complaint; that it was incumbent upon the Board's representatives, knowing of the pendency of the action, to keep themselves informed of the progress of the cause, as they could have done by filing an appearance in the matter on behalf of the Board; and that having chosen to rely upon defendants' personal counsel the Board could not reasonably expect to require plaintiffs to go to the trouble and expense of proving their case a second time when they had no reason to anticipate in advance that defendants would not defend on the date set for trial. The trial judge agreed with the last-stated of the plaintiffs' contentions and refused to hear proofs as to the failure of notice to the Board of intention to enter judgments on June 12, 1958. No suggestion was made or consideration given by court or counsel as to whether plaintiffs should be required to submit any further substantiation of the merits of the claims underlying the judgments, or as to the amount of the damages reflected therein. There is, therefore, at least for that reason, no basis for sustaining an alternative contention by plaintiffs that, at most, this was a situation of failure of full and fair defense by defendants, rather than of a default judgment; and that the trial judge determined on the motion for payment that the judgments were in amounts justly due and payable out of the Fund. The trial judge undertook no such determination. Moreover, as we shall see, this was indeed a case of judgment by default within the statute.
The issue of statutory construction posed by this controversy is clearly drawn. It has not heretofore been passed on by our courts. At the outset, it is to be emphasized that we are obliged to give full recognition to any mandate *194 in the act, if sufficiently intelligibly expressed, without regard to any notions of our own or of the parties as to the fairness, procedural expediency, or administrative wisdom of any of the legislative directions. While the statute is to be liberally construed to advance the remedy, due regard must also be given to the evident policy of such provisions as section 14 and others in the act to protect the Fund against fraud and abuse. See Giles v. Gassert, 23 N.J. 22, 34 (1956). Furthermore, if a particular statutory requirement geared to such objectives is plain in meaning, it cannot be disregarded on the supposed justification that no abuse or fraud is shown in the particular instance. Prophylactic statutory measures must be applied uniformly, or the legislative design is inevitably subverted over the long run. Samuel Braen's Sons, etc. v. Fondo, 52 N.J. Super. 188, 193 (App. Div. 1958).
No matter what may legitimately be regarded as unclear or debatable about section 14 of the act in other respects, we entertain no doubt that its provisions relative to entry of judgments by default are invocable by the Board whether or not it has previously assigned a claim or action to an insurer for investigation or defense. We cannot agree with the contention of plaintiffs that where the Board decides to assign a claim to an insurer for defense, pursuant to section 6, after being notified of the institution of an action, the only recourse it has by way of defense under section 14 against an application for an order for the Board to pay a judgment is a showing either that the action was not fully and fairly defended or that the judgment was entered by consent or with the agreement of the defendant. There is only one reference in section 14 to the contingency of an assignment to an insurer, and that has nothing to do with default judgments. Expressio unius est exclusio alterius.
Moreover, plaintiffs apparently concede, as is clear from section 14, that the Board may in an appropriate case raise the objections of insufficient defense or consent judgment notwithstanding an assignment to an insurer which has left *195 the defense of the matter to personal counsel for the defendants. We discern neither express provision nor any reason or logic in imputing a different legislative intent in respect to the right of the Board to invoke the remedies vouchsafed the Fund by sections 14 and 15 in case of entry of judgment by default notwithstanding a previous assignment of the case to an insurer.
The act permits the defendant to employ his own counsel and defend the action, section 7 (N.J.S.A. 39:6-67), although he must cooperate with the insurer defending in his name (ibid.) for the Board if requested to do so. Section 8 (N.J.S.A. 39:6-68). The matter of administrative judgment in the Board's (or its assigned insurer) leaving the defense of an action unreservedly to a defendant's personal counsel is not for us to pass upon. But we cannot find either in section 14 or elsewhere in the act an intent to qualify the unconditional remedies clearly granted the Board by the act against an application for payment of a default judgment, as specified in sections 14 and 15, on the basis of whether or not the Board or its assigned insurer have relied on the defendant's personal counsel to defend the case up to the time of entry of the default judgment. What result would be indicated if these defendants never retained counsel and default judgment were entered by reason of negligence or inattention of the Board or its representatives, after notice of the pendency of the action, is a problem we do not have to deal with in the case at hand.
We proceed to consideration of the question as to whether the judgments of June 18, 1958 were judgments by default within the intent of section 14. If they were, it is obvious that the Board was not given adequate notice of intention to enter them and it must under the statute be afforded an opportunity to defend the claim in any of the ways specified by section 15.
It may well be that the draftsmen of section 14, in requiring notice of intention to enter a "judgment which *196 was entered by default," were mainly envisaging the situation in our upper courts, where, under R.R. 4:56-1 and R.R. 4:56-2, upon failure of a defendant to plead or otherwise defend, the clerk enters a default on the docket on the basis of plaintiff's affidavit, followed thereafter by entry of final judgment by the court on motion supported by proofs as to damages. But we are not justified in restricting the Board's protection under section 14 to instances of that kind of default. By virtue of the transfer of the case to the county district court under R.R. 4:3-4 the procedure thereafter was governed by the rules of practice applicable in that court. Ibid. (d). R.R. 7:9-1, dealing with default practice in the county district courts, provides for entering default by the clerk, inter alia, when a defendant "has failed to appear at the time fixed for trial." In actions other than for a sum certain, judgment by default is had upon application to the court therefor. R.R. 7:9-2(b). As against an infant or incompetent, judgment by default is forbidden except upon notice to a guardian or guardian ad litem. In other cases written notice of the application may be ordered served "if it shall seem to the court that justice so requires." The implication thus is clear that (except as to judgment against an infant defendant) the court in a county district court action may under the rules in its discretion enter judgment by default forthwith, upon suitable proofs, when the defendant fails to appear or defend on the day set for trial, without special advance notice to defendant of the entry of the judgment by default.
We are consequently of the opinion that the judgments entered against defendants here were "entered by default" within the coverage of section 14. Clearly the Board was not given notice of intention to enter such judgments nor afforded an opportunity to protect the Fund in respect to them as specifically required by that section. The trial court consequently erred in entering the order for payment of the judgments out of the Fund. In so holding, we do not imply any criticism of plaintiffs in having failed to give *197 any particular prior notice of the June 12, 1958 trial date to the Board. They had no reason to expect a default in appearance and defense by the defendants. On the other hand, however, neither did the Board or its representatives. In such a contingency it is the statutory policy, unmistakably inherent in the language of the act, that the objective of protection of the Fund should take priority over that of avoidance of inconvenience to plaintiffs.
The trial court was of the opinion that unless the Board, when served with a copy of the complaint, enters an appearance, so as to assure itself of notice of all further steps in the cause, it may not claim the benefit of section 14 in such a case as this. We cannot agree. The court cannot impose conditions to be met by the Board neither specified by the Legislature nor fairly to be implied from the statute. The Board is entitled, in its discretion, to undertake to save the Fund the expense of active defense of an action where defendants have retained personal counsel and the Board deems it prudent to permit the latter to defend without Board participation. By so doing the Board takes the chance of irremediable exposure of the Fund to a consequent unsatisfactorily high judgment if there be neither default nor a showing of inadequate defense or entry of judgment by consent or agreement. But where any of these conditions are shown the Board may have resort to the specified protection of sections 14 and 15 when payment out of the Fund is applied for.
Plaintiffs seek to reinforce the theory of the trial court in dealing with this matter by citing Widstrom v. Semenko, 11 D.L.R.2d (1958) 735 (Br. Col. Sup. Ct. 1957). The case does not help them. In fact, in that case an interlocutory judgment for plaintiff for failure of the defendant to appear had been set aside by consent when plaintiff realized the Attorney General had not been served as required by the act. Thereafter the Attorney General was served and filed a defense. Plaintiff gave notice of taking defendant's deposition but the latter could not be found and did not *198 appear. On motion to strike the defense the Attorney General resisted the application on the basis of a contention that he had a status on behalf of the Fund independent of the defendant. The court ruled to the contrary, citing the statutory provisions that the Attorney General's activities in the case are on behalf of and in the name of the defendant. We express no opinion as to the applicability of that result to the scheme of our own statute. It suffices to note that the case does not bear upon the problem before us.
While the result we have arrived at is so plainly indicated by the statute as not to require outside precedential fortification, the Ontario cases of Re McDonald v. McGinnis, O.W.N. 127, 128 (H. Ct. Just. 1949), and Prince v. Bain & Mountain, O.W.N. 778, 780 (H. Ct. Just. 1948), are generally supportive of the approach of strict enforcement of the roughly comparable statutory provisions in the Ontario act for protection of the Fund against abuse. See also Re Sinclair v. Woodward, (Ont. Ct. App. 1951) O.W.N. 816, 1 D.L.R. 398, 400 (1952) ("Every provision of the Act designed for protection of the Fund should be given full consideration and effect"); and see 14 Canadian Encyclopedic Digest (Ontario) (2d ed. 1956), § 70, pp. 285-286. It should be pointed out, however, that the Ontario statutory section 99 (comparable to our own section 14) specifies for relief the specific situation where "the defendant did not appear in person or by counsel at the trial." 2 Rev. Stat. Ontario 1950, chapter 167, p. 424. Moreover, that act contains no provisions permitting defense of an action in the first instance by or on behalf of the Fund.
In view of our conclusions as to the Board's rights under section 14, we need not consider the merits of an alternative ground of reversal submitted by the Board (but not below) based on the failure of the trial court to have seen to the appointment of a guardian ad litem for the minor defendant before entry of judgment against him.
Reversed; no costs.