DYANDRIA DAREL, PLAINTIFF–RESPONDENT, v. PENNSYLVANIA MANUFACTURERS ASSOCIATION INSURANCE COMPANY, DEFENDANT–APPELLANT, AND S & N LEASING CORP., AND DAVID WILKERSON, DEFENDANTS.

Argued February 28, 1989—Decided March 29, 1989.

*Robert F. Colquhoun* argued the cause for appellant (*Colquhoun & Colquhoun,* attorneys; *Brian C. Gallagher,* on the brief).

*Dyandria Darel* argued the cause *pro se.*

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 113 *N.J.* 357 (1988), to review the Appellate Division's affirmance of a judgment awarding plaintiff personal-injury-protection (P.I.P.) benefits and counsel fees in this "no-contact" accident involving an automobile and a pedestrian. The statutory provision at issue grants P.I.P. benefits to pedestrians (other than the named insured and resident members of his or her family) who "sustain[ ] bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile." *N.J.S.A.* 39:6A–4. We conclude that plaintiff's proofs satisfied those statutory conditions and that she is therefore entitled to P.I.P. benefits under the named insured's policy. We likewise affirm the award of counsel fees.

I

On November 9, 1983, plaintiff rode a bicycle off the sidewalk onto the road and into the path of an oncoming automobile insured by defendant-appellant, Pennsylvania Manufacturers Association Insurance Company (PMI). Plaintiff swerved abruptly, as did the driver of the car. As a result of this maneuvering plaintiff fell and sustained personal injuries, for which she brought suit against the PMI-insured-automobile owner and driver, claiming negligent operation. In that same suit plaintiff sought P.I.P. benefits from PMI.

The trial court permitted the personal-injury claim to go to the jury, ruling that the P.I.P. claim would be decided by the court on the basis of the facts as determined by the jury. To a

specific interrogatory that asked if the PMI-insured driver was negligent, the jurors responded unanimously in the negative. Thereafter, in considering the P.I.P. claim, the trial court made findings consistent with but going beyond the jury's determination, namely, that not only was the operator of the automobile not negligent but plaintiff herself was negligent and, contrary to plaintiff's assertion at trial, there was no contact between the automobile and the bicycle. The trial court nevertheless found that plaintiff's injuries were "caused by" the automobile, wherefore it awarded plaintiff P.I.P. benefits and counsel fees.

To achieve that result the trial court had to focus on plaintiff's status in the context of the controlling statute, *N.J.S.A.* 39:6A-4. Plaintiff, as operator of a bicycle, was within the definition of a "pedestrian" in *N.J.S.A.* 39:6A-2(h), a section of the New Jersey Automobile Reparation Reform Act, sometimes known as the No–Fault Act. Before it was amended on October 4, 1983, that Act, in *N.J.S.A.* 39:6A-4, provided P.I.P. benefits

> without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile.

The protection, then, extended to three classes of people:

> (1) named insureds and members of their family are covered for bodily injury arising from an accident involving an automobile; (2) "other persons" are given protection for bodily injury sustained "while occupying the automobile of the named insured or while using [it] with [the named insured's] permission"; and (3) "pedestrians" are covered for injuries caused by the automobile or when struck by an object propelled by it.
>
> [*Hopkins v. Liberty Mutual Ins. Co.*, 156 *N.J.Super.* 72, 75 (App.Div.1978).]

As can be seen, the Act contemplated two classes of pedestrians. The first included the named insured or a familial member of the named insured's household who sustains an injury "as a result of an accident involving an automobile," *N.J.S.A.* 39:6A-4, in which event "it [made] no difference if the injured person

was, at the time of the accident, riding in a car or on a bicycle, motorcycle, truck, snowmobile, horse, donkey or bus. Such [was] the plain language of the statute." *Harlan v. Fidelity & Casualty Co.*, 139 *N.J.Super.* 226, 229 (Law Div.1976). The second class of pedestrians—"stranger" pedestrians ("strangers" to the insurance contract)—consisted of pedestrians who "sustain[ ] bodily injury caused by the named insured's automobile or [are] struck by an object propelled by or from such automobile." *N.J.S.A.* 39:6A–4. The effect of the difference between the two classes was that whereas mere "involvement" with an automobile triggered the availability of P.I.P. benefits for the named insured and resident family members (be they pedestrian, passenger, or operator), pedestrians in the second class had to demonstrate that the insured's automobile "caused" their injuries.

The trial court acknowledged that the statute imposed on this second class of "stranger" pedestrians a more "intensive" or "tighter" test than that controlling the first class of pedestrians, that is, a showing of "causation" between the injuries and the insured automobile rather than of mere "involvement" with the automobile. To determine "causation" the court concluded that a "but for" test was the appropriate one. The court's letter opinion characterized that test as "stricter than 'involved with,'" and therefore "if but for the auto's presence the injuries would not have occurred, the claimant can prevail." The court found that plaintiff's proofs satisfied that test, and therefore it awarded plaintiff P.I.P. benefits and, on the strength of *Maros v. Transamerica Insurance Co.*, 76 *N.J.* 572, 579 (1978), counsel fees as well.

The Appellate Division issued two opinions. In the first, reported at 220 *N.J.Super.* 156 (1987), it reversed the judgment in favor of plaintiff. The court concluded that (1) the amendment to *N.J.S.A.* 39:6A–4, which was enacted before plaintiff's accident, controlled her eligibility for benefits; (2) the amendment sharply restricted the eligibility of the named insured and resident members of the insured's family, who under the

amendment had to show not simply that they were injured in an accident "involving an automobile" but rather that they were injured as a result of an accident "while occupying, entering into, alighting from or using an automobile," or *as a pedestrian, being struck by an automobile, N.J.S.A.* 39:6A–4 (emphasis added); and (3) even though the amendment did not expressly change the language covering "stranger" pedestrians (the "causation" language referred to above), nevertheless the legislature could not have intended to create two classes of pedestrians, particularly where the result would be to afford less protection to a pedestrian who was an insured or a resident family member. 220 *N.J.Super.* at 159–60. Therefore, because plaintiff had not been struck by the insured's vehicle, the court declared her ineligible for P.I.P. benefits. *Id.* at 161.

Six months after publication of its first opinion the Appellate Division, on its own motion, ordered reconsideration of the appeal, directing the attention of the parties to the issue of whether the 1983 amendment to *N.J.S.A.* 39:6A–4 was in effect and operable so as to affect plaintiff's rights on the date of the accident, November 9, 1983. 226 *N.J.Super.* 292 (1988). The court concluded that although the amendment was passed on October 4, 1983, it did not become effective until January 1, 1984, *id.* at 293 a determination not challenged here. The Appellate Division therefore held that the earlier statutory provision governed plaintiff's eligibility, and it amended its earlier opinion accordingly to affirm the judgment of the trial court. *Ibid.*

## II

Defendant concedes that the amended version of *N.J.S. A.* 39:6A–4 was not in effect on the date of plaintiff's accident and that her rights must be determined under the pre-amendment version. Nevertheless, defendant argues that the amendment fortifies the contention that the legislature intended, both before and after the amendment, that "stranger" pedestrians

were eligible for P.I.P. benefits only if *struck* by the named insured's automobile. The argument rests on the assumption that the amendment was the legislature's response to judicial decisions that had permitted recovery of P.I.P. benefits in "no-contact" situations, and that the amendment "unmistakably shows" that the legislature never intended, from the time the No–Fault statute was enacted, to afford P.I.P. benefits to claimants injured in "no contact" accidents—this, as manifested in the Introductory Statement to the 1983 amendment, *L*.1983, c. 362:

> These provisions mainly are designed to tighten statutory eligibility require-ments for personal injury protection coverage so as to comport with the original intent of the no fault law.

We disagree with the conclusion that defendant distills from the legislative history, although it is clear that the 1983 amend-ment to *N.J.S.A.* 39:6A–4 was indeed prompted by judicial decisions allowing recovery of P.I.P. benefits by a family mem-ber resident in the named insured's household against the insured's own carrier. See, *e.g., Gerber v. Allstate Insurance Co.,* 161 *N.J.Super.* 543 (Law Div.1978), and *Purdy v. Nation-wide Mutual Insurance Co.,* 184 *N.J.Super.* 123 (App.Div. 1982). Although in neither of those cases was the injured person a pedestrian, in both cases he (*Purdy* ) or she (*Gerber* ) was a resident-family-member motorcyclist who sustained inju-ries in a non-contact accident "involving" an automobile, for the consequences of which recovery was allowed under the P.I.P. coverage. The legislation was designed to tighten up the eligibility requirements for *named insureds* and *resident fami-ly members* only: pre-amendment, those claimants had to show only that they were injured as a result of an accident "involving an automobile," as in *Gerber* and *Purdy;* post-amendment, their eligibility turned on whether they were injured as a result of an accident "while occupying, entering into, alighting from or using an automobile," or, as a pedestrian, by being struck by an automobile. *N.J.S.A.* 39:6A–4.

In respect of "stranger" pedestrians, however, the statutory amendment obviously was not intended to affect the rights of those beneficiaries. It did nothing to change their status. The words controlling the status of "stranger" pedestrians are simply repeated in the amended version of the statute, and "[p]rovisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law." N. Singer, 1A *Sutherland Statutory Construction* ¶ 22.33 (Sands 4th ed. 1985) (hereinafter *Sutherland*). Defendant's argument builds on the Appellate Division's claim, as stated in its first opinion, 220 *N.J.Super.* at 160, that the amendment must apply to all pedestrians because a contrary ruling would permit "stranger" pedestrians to recover for "no-contact" injuries but would render family-member pedestrians ineligible, a result that the legislature surely could not have intended and that courts therefore should not countenance.

But the contention that the amended language applies to both classes of pedestrians simply overlooks the basic doctrine that each word of the statute should be given effect. 2A *Sutherland, supra,* § 46.06. There is no justification for ignoring the legislature's use of the word "caused" and replacing it with the word "struck." We observe that when the legislature meant "struck," that is the word it used: the statute, in both its pre-amendment and post-amendment forms, extends benefits to "stranger" pedestrians who sustain bodily injury "caused" by the insured automobile or who are "struck" by an object propelled from it. Given the juxtaposition of those expressions, it is inconceivable that the legislature would not have used "struck" had it intended so to qualify the injuries inflicted by the automobile.

Nor are we impressed by the asserted anomaly created by our reading of the amended statute, as adverted to by the Appellate Division in its first opinion, 220 *N.J.Super.* at 160, and latched on to by defendant, namely, that "stranger" pedestrians would receive greater protection than would "family"

pedestrians. That result is not plainly anomalous at all. Different considerations went into setting the grounds for recovery by each group. Family members still receive broad protection under the amendment, and in their role as pedestrians they are covered if they are struck by *any* car. Stranger pedestrians are covered if they receive injuries caused by the *named insured*'s car. *Cf. Sotomayor v. Vasquez*, 109 *N.J.* 258, 266 (1988) (pointing out that "the Legislature has created a two-tiered system of PIP coverage."). The two categories do not enjoy sufficient similarity to form a reliable basis for a valid comparison concerning the level of protection.

Moreover, even if these two groups could be considered suitable for comparison purposes, the distinction between the two groups should not be a concern of the courts. If the legislature concludes that we have misread the amended statute, it can easily correct our misapprehension of its intention. Until that day comes, we will read the statute with our best understanding of the English language and of the pertinent canons of construction, leaving for the legislature the wisdom of continuing or obliterating the distinction in classes of pedestrians that is unavoidably yielded by our reading.

### III

With that detour behind us, we return to the critical issue in the case, namely, whether under the circumstances of the accident the plaintiff's injuries were "caused" by the named-insured's automobile. Our conclusion that "caused" does not require that the pedestrian be "struck by" the automobile moves us only part way to the answer. The question remains whether "but for" cause is consistent with the statute's purposes, as the trial court held, or whether "cause" as understood in the context of "negligence-proximate cause" must be shown, as defendant contended at oral argument.

We need pause on the latter point only briefly. We are interpreting a "no-fault" statute. It has, since its original

form, provided for "the payment of benefits without regard to negligence, liability or fault of any kind * * *." *N.J.S.A.* 39:6A–4. We are not about to undermine the beneficent purposes of the legislation by recognizing any residue whatsoever of "fault" concepts.

Those same beneficent purposes work in favor of our conclusion that the requirement of the No Fault Act that the "stranger" pedestrian's injuries be caused by the named insured's auotmobile is satisfied under a "but for" standard. The Act itself admonishes that it is to be "liberally construed so as to effect the purpose thereof." *N.J.S.A.* 39:6A–16. This Court has characterized the Act as "social legislation," and P.I.P. coverage as "a social necessity" that should be given "the broadest application consistent with the statutory language." *Amiano v. Ohio Casualty Ins. Co.,* 85 *N.J.* 85, 90 (1981). Guided by the foregoing principles of liberal construction, we need not submit "caused by" to microscopic examination in a search for nuances of language or fine distinctions of meaning. *Cf. Hill v. Yaskin,* 75 *N.J.* 139, 143 (1977) (discussing "foreseeability" as a function of duty determination and as applied to proximate cause). The phrase "caused by" is a straightforward one in this context and can be given a straightforward meaning. "When a popular or common word is used in a statute, but is not defined, the word should be given its common meaning." 2A *Sutherland, supra,* § 47.28.

"Cause" has been defined as "a person, thing, fact or condition that brings about an effect or that produces or calls forth a resultant action or state * * * something that occasions or effects a result: the necessary antecedent of an effect: something that determines any motion or change or produces a phenomenon * * *." Webster's Third International Dictionary 356 (15th ed. 1971). "Caused" has been defined as "to serve as cause or occasion of: bring into existence: MAKE * * *." *Ibid.* These definitions suggest that a "but for" test will satisfactorily determine whether a specific automobile could be

considered the "cause" of or to have "caused" a plaintiff's injuries. Defendant contests the propriety of a "but for" analysis; it does not dispute the proposition that application of a "but for" test to the facts before leads us to the conclusion that plaintiff qualifies for P.I.P. benefits.

## IV

■ Defendant complains that the Appellate Division's reversal of itself in its second opinion, issued eight months after its first opinion, somehow works an intolerable unfairness. The argument is that a court's power to reverse itself "should be subject to the time requirements of the rules for appeal."

Under *Rule* 4:50–1(a) a court may, "[o]n motion, with briefs, and upon such terms as are just, * * * relieve a party or his legal representative from a final judgment or order for * * * (a) mistake * * *." Here the Appellate Division, belatedly recognizing the problem of the effective date of the amendment to *N.J.S.A.* 39:6A–4, called for briefs from the parties, heard oral argument, and then confessed that it had erred in its first opinion. As has been observed elsewhere, "[c]onfession of error is good not only for the soul but for an accurate view of the law." *Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 179 n. 1 (1979) (concurring opinion). In any event, whatever might be the result in some other context, we perceive no demonstrable unfairness to defendant in the unfolding of the events leading to the Appellate Division's change of position in this case. All that happened was that plaintiff was ultimately awarded the judgment of which she had been erroneously deprived the first time around. We are confident that the world will continue to turn if judges are allowed to correct their mistakes.

## V

Finally, we will not disturb the award of counsel fees. The issue of the propriety of the award of fees was not briefed or

argued in this Court. We gather that the award was challenged below on the ground that plaintiff was not a successful claimant, and that if fees are to be allowed, the amount should be reduced. Plaintiff was successful. The trial court's exercise of discretion in approving the amount is sustainable.

JUDGMENT AFFIRMED.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.