The court has signed the form of order submitted by defendants.

619 A.2d 268

JOSHUA JACKSON, PLAINTIFF, v. LORRAINE
FARRION, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided August 7, 1992.

*Peter J. Vazquez,* for plaintiff (*Blume, Vazquez, Goldfaden, Berkowitz & Donnelly,* attorneys).

*Cindy L. Thompson* and *Edward P. Papalia,* Jr., for defendants New Jersey Automobile Full Insurance Underwriting Association and Lorraine Farrion.

*Floyd F. Lombardi,* for Unsatisfied Claim and Judgment Fund and Samuel F. Fortunato, Commissioner of Insurance of New Jersey (*DeSevo, Cerutti & Lombardi,* attorneys).

MARGULIES, J.S.C.

█ No New Jersey court has decided whether the New Jersey Automobile Full Insurance Underwriting Association (N.J.A.F.I.U.A.) or the Unsatisfied Claim and Judgment Fund (U.C.J.F.) is primarily liable for Personal Injury Protection (PIP) coverage for a pedestrian injured by a stolen car. The matter is before the court on cross-motion for summary judgment by plaintiff and N.J.A.F.I.U.A.

█ Absent compelling cause, this court will adhere to precedent set by a coordinate branch of the judicial system even though it may not be binding or obligatory authority. In a society which is highly litigious and engulfed with reported cases, a strong argument can be made for judicial consistency. *New Jersey Mfgrs. Ins. v. Griffin,* 253 *N.J.Super.* 173, 601 *A.*2d 261 (Law Div.1991) controls the issue of whether the PIP carrier of the owner of the car applies when the car is stolen. Though this court may have reservations, there is sufficient logic in that opinion to outweigh the confusion which would follow if a coordinate court reached a different result.

The rationale which the court is using to determine the issue of primacy is essentially the verbatim adoption of the argument submitted by U.C.J.F.

Plaintiff sustained serious injuries on March 14, 1991, while a pedestrian crossing Stegman Street in Jersey City, New Jersey. He alleges that he was struck by a 1982 Buick owned by defendant Lorraine Farrion. The operator of the vehicle is unknown. Ms. Farrion contends that her vehicle was stolen and it is inferred that the thief was driving the motor vehicle at the time the accident occurred. These defendants do not have facts to dispute that contention.

N.J.A.F.I.U.A. argues that it should not be obligated to provide personal injury protection to the injured plaintiff because of the theft of the vehicle and the fact that it was being operated without the owner's permission relying, in great part, upon the holding of *Morgan v. Prudential Ins. Co. of America,* 242 *N.J.Super.* 638, 577 *A.*2d 1300 (App.Div.1990), although the fact pattern, reasoning and spirit of the holding in that case are significantly different from the matter at bar.

*Morgan, supra,* involved a claim for PIP (death) benefits pursuant to *N.J.S.A.* 39:6A–4 (the statute). Decedent was shot to death by her husband at 2:00 o'clock in the morning while she was seated in her double-parked car. Her husband was charged with murder, but was convicted of manslaughter. The court considered the shooting as an "accident" under the statute. Plaintiff argued that the "injured" person was occupying the automobile, so she was not disqualified by virtue of the amendatory language of the statute (from a broader definition of "bodily injury as a result of an accident involving a motor vehicle" to the more restrictive definition "bodily injury as a result of an accident while *occupying,* entering into, alighting from, or using an automobile"). The court concluded that:

"There was no legal nexus between the shooting and the kind of risk covered under the automobile policy...." (*Morgan, supra,* p. 641, 577 *A.*2d 1300)

Quoting from *Uzcatequi–Gaymon v. New Jersey Manufacturers Ins. Co.*, 193 *N.J.Super.* 71, 472 *A.*2d 163 (App.Div.1984) the court said:

"For the purpose of this appeal we assume that plaintiff can prove that the car was parked next to the phone booth, that decedent had the car keys in his hand, that he was talking to his girlfriend over the telephone, that his automobile was very important to him, and that he was shot and killed by persons attempting to rob him of his car keys and his automobile. Nevertheless, in our view, while theft of the automobile may have been the ultimate object of the attack, *from a legal viewpoint the automobile was not the cause of the decedent's injuries and death.* Rather, the cause of his injuries and death was the act of robbery committed by his assailants. *That the automobile was the object of the robbery was merely an attending circumstance and did not transform this incident into 'an accident involving an automobile' within the meaning of the [statute].* [*Id.* at 73, 472 *A.*2d 163]." *Morgan, supra,* 242 *N.J.Super.* p. 641, 577 *A.*2d 1300 (emphasis ours)

The court went on to acknowledge that the decedent's presence in her automobile provided the *"setting"* (*Morgan,* p. 642, 577 *A.*2d 1300) for the killing and in some sense may have given the decedent's husband an enhanced opportunity to kill her.

"But an automobile must have something more to do with the 'accident' if it is to be a *legal cause.*" See, *Foss v. Cignarella,* 196 *N.J.Super.* 378, 482 *A.*2d 954 (Law Div.1984). (emphasis ours)

The concept dealt with in *Morgan* is *legal cause.* The legal cause of decedent's injury and death in both *Morgan* and *Uzcatequi* was not the automobile, which merely provided the setting for the incident. There was "no legal nexus" between the automobile and the "injury". It is the absence of that necessary relationship which precluded the recovery of PIP benefits in both those cases.

Not so in the instant matter. There is no question but that the stolen vehicle by virtue of its striking the plaintiff, was the legal cause of plaintiff's injuries. Consequently, plaintiff's reliance upon *Morgan* and cases of like circumstance, is inappropriate. Unfortunately, movant chose to rely upon the concluding sentence of the *Morgan* opinion, which is essentially dicta and which adds nothing to the court's analysis of legal causation. It is not germane to the *Morgan* opinion to compare PIP coverage with liability coverage, because there was no

issue of liability coverage in the case. The only claim made was for PIP death benefits.

Accordingly, N.J.A.F.I.U.A.'s attempt to latch on to the extraneous language in *Morgan* and by so doing to equate lack of legal causation on the one hand, with lack of liability coverage on the other, is unwarranted. There is simply no authority for movant's assertion that because the insurance carrier for the stolen vehicle was not obliged to provide liability insurance coverage for the unauthorized driver of the stolen car, it, therefore, has no obligation to provide PIP benefits to a pedestrian injured by that same vehicle. *Morgan* is not authority for that proposition.

The fact of an unknown driver in the instant matter does not distinguish this case from *Griffin* where the operator of the stolen vehicle was identified. Plaintiff, in both cases, has a right to recover PIP benefits against the Fund, (assuming there is compliance with the eligibility provisions of the UCJ Fund Act, *N.J.S.A.* 39:6–61, *et seq.*). Whether a plaintiff-pedestrian is struck and injured by a stolen vehicle operated by an *unidentified unknown* driver, or by a *known uninsured* is irrelevant insofar as plaintiff's right to seek recovery from the Fund, *N.J.S.A.* 39:6–86.1. This is an everyday happenstance. If the plaintiff-pedestrian has no UM coverage from which to recover and the vehicle struck is uninsured, he has a right to recover PIP benefits from the Fund. In the instant case, as well as *Griffin*, plaintiff would have a right to recover from the Fund, *if there was no PIP coverage on the vehicle.* Here, there was coverage for plaintiff's PIP expenses under N.J.A.F.I.U.A.'s policy.

The issue is—who has the primary duty to pay plaintiff's PIP expenses, the carrier for the stolen car or the Fund? *Fisher v. New Jersey Auto. Full Ins.*, 224 *N.J.Super.* 552, 540 *A.*2d 1344 (App.Div.1988) is helpful. In that case, the court held that even though a policy of automobile liability insurance issued by N.J.A.F.I.U.A. was void *ab initio* because the vehicle sought to

be covered was not registered in New Jersey, the court, nevertheless, held that plaintiff, a passenger in that vehicle, which collided with another's vehicle, was entitled to recover PIP benefits under that void policy. The ruling was grounded upon the nature and scope of the No–Fault Law.

"One of the purposes of the No–Fault Law is to afford reparation for objectively approvable economic losses resulting from automobile accidents. In particular, *N.J.S.A.* 39:6A–4 requires prompt payment of medical and other expenses to certain claims of persons injured in automobile accidents without regard to fault and without having to await the outcome of protracted litigation. This is social legislation designed to give the broadest protection to automobile accident victims consistent with the language of its pertinent provisions. *Amiano v. Ohio Cas. Ins. Co.*, 85 *N.J.* 85, 90 [424 *A.*2d 1179] (1981); *N.J.S.A.* 6A–16."

As *Griffin* succinctly noted:

"The *status* of the operator of the vehicle is not mentioned in *N.J.S.A.* 39:6A–4 which relates to pedestrians, and hence is *irrelevant* for purposes of this opinion." (p. 177) (emphasis ours)

It is not important who was driving the vehicle. The emphasis is on the fact that it was indeed the vehicle that caused the injury. Compare *Darel v. Pennsylvania Mfrs. Ass'n Inc. Co.*, 114 *N.J.* 416, 555 *A.*2d 570 (1989), *Smelkinson v. Ethel & Mac Corp.*, 178 *N.J.Super.* 465, 429 *A.*2d 422 (App.Div.1981).

Cases explaining the purpose and scope of the UCJ law are legion. See *Wormack v. Howard*, 33 *N.J.* 139, 162 *A.*2d 846 (1960); *Dixon v. Gassert*, 26 *N.J.* 1, 138 *A.*2d 14 (1958), *Caldwell v. Kline*, 232 *N.J.Super.* 406, 557 *A.*2d 661 (App.Div.1989), *N.J.S.A.* 39:6–61 *et seq.* In *Douglas v. Harris*, 35 *N.J.* 270, 279, 173 *A.*2d 1 (1961) the Court said:

"The Fund is created for those purposes by charging fees to registrants of uninsured motor vehicles and by levying assessments against liability insurance companies doing business in New Jersey and is regarded as a trust fund for the stated purposes and the cost of administration. *Wormack v. Howard*, 33 *N.J.* 139, 143 [162 *A.*2d 846] (1960). The public interest demands that the Fund, although a trust fund for those individuals injured by financially irresponsible or unidentified operators of motor vehicles, be administered in a fashion to assure that *only those persons legitimately entitled to participate in its benefits are paid therefrom.* This is a duty imposed by public policy and owed to the contributors as well as the general public. See *Myers v. Cave*, 55 *N.J.Super.* 185 [150 *A.*2d 269] (App.Div.1959)."

As Judge Dwyer pointed out in the *Griffin* opinion, the issue is a novel one and there are no New Jersey cases directly in point. The court must, therefore, assess the scope of the No-Fault Act and that of UCJ Fund law, look to its underpinnings, purpose and scope as reflected in the various opinions interpreting its provisions in order to determine which is obliged to pay this plaintiff's PIP expenses. Such an assessment leads to the inevitable conclusion that it is the obligation of the carrier, in this case *N.J.A.I.F.U.A.* and, for that reason, the court grants plaintiff's motion for summary judgment as against that defendant and denies the motion of N.J.A.I.F.U.A.