270 N.J. Super. 379 (1994)
637 A.2d 226
WILFRED CAMPBELL III, PLAINTIFF-APPELLANT,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION BY AND THROUGH ITS SERVICING CARRIER PENNSYLVANIA NATIONAL INSURANCE CO., DEFENDANT-RESPONDENT, AND TRAVELERS INSURANCE CO., PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN, LEE J. YOON AND JEROME JOHNSON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1994.
Decided February 15, 1994.
*380 Before Judges PETRELLA, BAIME and CONLEY.
Cofsky & Zeidman, attorneys for appellant (Bruce D. Zeidman, on the brief).
Slimm & Goldberg, attorneys for respondent (Frank A. LaSalvia, on the brief).
*381 No other parties participated in this appeal.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Wilfred Campbell III (Campbell) appeals from a summary judgment order entered in favor of New Jersey Automobile Full Insurance Underwriting Association (JUA) by the Law Division on October 23, 1992. We affirm.
Campbell, a Pennsylvania resident, was struck by an automobile driven by defendant Jerome Johnson while bicycling in Philadelphia on September 14, 1987, causing him various injuries.[1] Johnson apparently had stolen the vehicle in Pennsylvania from defendant Lee J. Yoon, the owner of the vehicle and a New Jersey resident. The JUA had issued Yoon an automobile insurance policy, which provided in the "liability coverage" section:
We will pay damages for bodily injury or property damage for which any covered person[[2]] becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
The same insurance policy contained the following exclusion from coverage, among others:
A. We do not provide Liability Coverage for any person:
* * * * * * * *
8. Using a vehicle without a reasonable belief that that person is entitled to do so.
Regarding "out of state coverage," the insurance policy provided:

*382 If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:
If the state or province has:
1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.
No one will be entitled to duplicate payments for the same elements of loss.
Campbell had originally sought liability coverage from either the JUA, through its servicing carrier Pennsylvania National Insurance Company (Penn National), or Pennsylvania Financial Responsibility Assigned Claims Plan (PFRACP), through its servicing carrier Travelers Insurance Company (Travelers).
The JUA, through its servicing carrier Penn National, paid Campbell PIP benefits, including medical bills and income continuation benefits, but refused to provide any further coverage. At the summary judgment hearing, the JUA explained that it had paid PIP benefits, but refused to provide further coverage, because the language of the PIP statute simply requires that the vehicle be involved in the accident. Counsel for the JUA stated:
[O]bviously the PIP is paid because of the difference in the language. And although some of the case law has pointed to the fact that this creates an anomaly, in fact, the distinction between the UM statute and the PIP statute is clear. And we're really resting our ... case on that, that this is in essence a no insurance situation.
After the JUA denied coverage, Campbell sought coverage from Travelers, which denied it because the JUA had already paid PIP benefits and, thus, he had an available source of insurance coverage.[3]
*383 In August 1989, Campbell brought suit in the Commonwealth of Pennsylvania against the JUA and the PFRACP, among others, seeking insurance liability coverage.[4] The Pennsylvania court, however, dismissed the complaint as to the JUA on the ground it lacked jurisdiction. Afterwards, according to Campbell, "all parties agreed that the courts of New Jersey would provide an appropriate forum for a resolution of this dispute."
On September 16, 1991, Campbell filed a complaint in the Superior Court of New Jersey, Law Division, seeking a declaratory judgment ordering the JUA, through its servicing carrier Penn National, to provide full liability insurance coverage, including benefits for pain and suffering. Alternatively, Campbell sought a declaratory judgment requiring the PFRACP, through its servicing carrier, Travelers, to provide benefits for pain and suffering.[5]
At oral argument on the summary judgment motion, the JUA essentially asserted that, although it had paid PIP benefits, it was not required to provide liability coverage because the automobile had been stolen. Travelers responded that because Campbell had other insurance available to him, namely the JUA insurance policy, he was not entitled to coverage under the PFRACP.
In applying New Jersey law, the motion judge reasoned that Campbell was not entitled to coverage under the JUA policy because the vehicle that struck him had been stolen. The judge also dismissed the complaint with respect to Travelers.
*384 On appeal, Campbell argues that the motion judge erred in granting summary judgment to the JUA based upon both a territorial and criminal activity exclusion. Campbell additionally argues that the motion judge failed to apply properly the principle of comity in considering his claim for uninsured motorist benefits and, alternatively, in the event that summary judgment in favor of the JUA was appropriate, dismissal of his complaint against Travelers was erroneous.
After Campbell filed his notice of appeal, counsel for Travelers informed the office of the Clerk of the Appellate Division that the dispute between Campbell and Travelers had been amicably resolved and, thus, it did not participate in this appeal.
The motion judge correctly granted summary judgment in favor of the JUA. See R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). "All inferences of doubt are drawn against the movant in favor of the opponent of the motion." Id. And, even though the allegations of the pleadings standing alone may raise an issue of fact, if other papers show that, in fact, there is no real material issue, then summary judgment can be granted. Ibid. We must, therefore, decide (1) whether there was a genuine issue of material fact, and (2) if there was not, did the motion judge correctly apply the law.
Here, all essential facts are undisputed. That is, Johnson had stolen the automobile in Pennsylvania from a New Jersey resident; the JUA, a New Jersey insurance company, insured Yoon's automobile; Johnson struck Campbell, a Pennsylvania resident, with the stolen automobile in Philadelphia causing him various injuries. The issue is whether the JUA has an obligation to provide liability or uninsured motorist coverage to Campbell.
Initially, we examine the law governing the interpretation of the insurance policy. In State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 417 A.2d 488 (1980), our Supreme Court adopted a "most significant relationship" standard for determining choice-of-law issues, by stating:

*385 [T]he law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. [citations omitted] At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy. [Id. at 37, 417 A.2d 488.]
State Farm further held:
[I]n an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield. [Ibid.]
See Veazey v. Doremus, 103 N.J. 244, 247-248, 510 A.2d 1187 (1986); Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 561-563, 575 A.2d 878 (App.Div.), certif. denied, 122 N.J. 395, 585 A.2d 395 (1990); McCabe v. Great Pacific Century Corp., 222 N.J. Super. 397, 399, 537 A.2d 303 (App.Div. 1988); Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 672-673, 506 A.2d 817 (App.Div. 1986).
Here, the JUA policy was issued in New Jersey to a New Jersey resident, it provided coverage for a car registered in this state, and New Jersey was the place of the contract. New Jersey law, therefore, would apply in the absence of another state's more dominant interest. No other sufficiently dominant interest is presented by the facts of this case, and Campbell does not urge any. Aside from the fact that the theft and accident occurred in Pennsylvania and that Campbell is a Pennsylvania resident, there is an insufficient basis to conclude that Pennsylvania has a dominant interest in deciding the underlying insurance transaction and, hence, State Farm mandates that we apply New Jersey law.
Turning to the issue before us, the motion judge denied coverage for the following reasons:

*386 Here we don't have in my view an insured vehicle but we have a stolen vehicle.... [U]nder New Jersey case law the coverage is not available to that vehicle or to the operator of that vehicle once he steals it.
* * * * * * * *
And under New Jersey law coverage is not available for this type of accident to the thief or to the plaintiff who sustains injuries as a result of the accident....
We are satisfied that the exclusionary provision contained in the JUA policy relieves it of having to provide any coverage beyond the PIP benefits already paid.[6]
Our decision in St. Paul Ins. Co. v. Rutgers Cas. Ins. Co., 232 N.J. Super. 582, 557 A.2d 1052 (App.Div. 1989) is instructive and dispositive. In St. Paul two insurance companies disputed obligations concerning the liability insurance coverage for an automobile accident. Darren Mingo, who had a New Jersey driver's permit, but had not yet received his license, lived with his mother, Diane Miller. On the date of the accident, Mingo had taken his mother's car for a drive, allegedly without her permission, after being told by her only to wash it. Although not owned by her, Miller had the automobile insured in her name by Rutgers Casualty Insurance Company (RCIC). Margaret Miller (Margaret) (no relation to Diane Miller) was driving the second vehicle, which was *387 owned by her employer and insured by St. Paul Insurance Company (St. Paul), when she was struck by Mingo.
After settling with Margaret, St. Paul instituted a declaratory judgment suit against RCIC, which denied liability coverage because Mingo did not have the permission of his mother to drive the vehicle at the time of the accident, seeking to hold it responsible for coverage to Mingo under its policy. The motion judge granted summary judgment in favor of St. Paul, holding "that since Mingo was an additional insured under the terms of the RCIC policy, Miller's lack of permission was irrelevant." Id. at 584, 557 A.2d 1052.
On appeal, we reversed based upon certain exclusionary provisions in the RCIC policy. The relevant provisions of the RCIC policy provided:
INSURANCE AGREEMENT
A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.
* * * * * * * *
B. "Insured" as used in this part, means:
1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."
2. Any person using "your covered auto,"
* * * * * * * *
EXCLUSIONS
A. We do not provide liability coverage for any person:

* * * * * * * *
8. Using a vehicle without a reasonable belief that that person is entitled to do so. [Id. at 585, 557 A.2d 1052. (footnote omitted)]
We reasoned that, although the policy included family members of the named insured as additional insureds, "the exclusionary provision of paragraph 8 applies to `any person' using a car without permission." Id. at 586, 557 A.2d 1052. And, we stated:
[T]he exclusion at issue here is plain and unambiguous and is not in contravention of any statute or regulation. Although N.J.S.A. 39:6A-1 et seq. does not expressly state that a liability insurer may exclude from coverage, non-permissive users, such an exclusion has not been held to be against public policy. [Ibid.]
*388 See, e.g., Allstate Ins. Co. v. Malec, 104 N.J. 1, 514 A.2d 832 (1986) (Court upheld provision in automobile policy that excluded from coverage injuries resulting from intentional acts of the insured). For exclusions barring liability coverage, see generally N.J.S.A. 39:6A-7, which provides:
a. Insurers may exclude a person from benefits under section 4 and section 10 where such person's conduct contributed to his personal injuries or death occurred in any of the following ways:
(1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or
(2) while acting with specific intent of causing injury or damage to himself or others.
b. An insurer may also exclude from section 4 and section 10 benefits any person having incurred injuries or death, who, at the time of the accident:
(1) was the owner or registrant of an automobile registered or principally garaged in this State that was being operated without personal injury protection coverage;
(2) was occupying or operating an automobile without the permission of the owner or other named insured. [(emphasis added and footnotes omitted)]
The court in St. Paul also relied upon Nicholas v. Sugar Lo Co., 192 N.J. Super. 444, 471 A.2d 44 (App.Div. 1983), certif. denied, 96 N.J. 284, 475 A.2d 582 (1984). In Nicholas, David Kligerman, an unlicensed fourteen-year-old boy, was involved in a two-car automobile accident on a public road. On the date of the accident, Kligerman did not have his parents' permission to operate the vehicle, which was owned and insured by the Sugar Lo Company, a partnership in which his parents were partners. Although on prior occasions Kligerman's parents had allowed him to drive under their supervision, they specifically prohibited him from driving outside of their presence or on public roads.
In upholding the motion judge's order finding that Kligerman was not covered by the Sugar Lo policy, we distinguished Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 166 A.2d 345 (1960), and similar cases,[7] reasoning that no liability coverage existed under *389 the policy because Kligerman did not have initial permission but, in fact, "had been expressly forbidden to use the vehicle." Id. 192 N.J. Super. at 452, 471 A.2d 44. We further reasoned that Kligerman's earlier uses of the vehicle under his parents' supervision were "so remote" that his use of the automobile on the day of the accident "may not reasonably be regarded as being related to the earlier permission." Ibid.
Here, the JUA insurance policy, under the plain and unambiguous exclusionary provision contained in paragraph eight, does not afford Campbell liability insurance coverage because Johnson obviously did not have permission, either express or implied, to operate the insured vehicle on the day of the accident and, moreover, in the language of the exclusionary clause, used the *390 "vehicle without a reasonable belief that [he was] entitled to do so."[8]
We consider Campbell's alternative argument, that in the event summary judgment in favor of the JUA was appropriate dismissal of his complaint against Travelers was erroneous, moot because Travelers settled with Campbell. Even if, however, the parties had not settled their differences, Pennsylvania provides the appropriate forum to decide whether Campbell has a meritorious claim against Travelers under the PFRACP.
Accordingly, the judgment of the Law Division is affirmed.
NOTES
[1] At the time of the accident, according to Campbell, neither he nor any member of his household owned an automobile and, thus, he had no automobile insurance coverage.
[2] "Covered person" as used in this section means, among other things, "[a]ny person using your covered auto."
[3] Travelers relied upon 75 Pa. Cons. Stat. Ann. § 1754, which provides in part:

An eligible claimant who has no other source of applicable uninsured motorist coverage and is otherwise entitled to recover in an action in tort against a party who has failed to comply with this chapter may recover for losses or damages suffered as a result of the injury....
In turn, 75 Pa. Cons. Stat. Ann. § 1752(a)(6) defines an eligible claimant as a person who:
[i]s otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.
[4] The record does not contain any of the pleadings from that litigation and it is unclear what precise claims were asserted by Campbell against the JUA and the PFRACP.
[5] On January 9, 1992, the complaint against the PFRACP was dismissed, apparently because the claim asserted against it was duplicative of the claim asserted against Travelers.
[6] The issue of whether the JUA was obligated to pay PIP benefits is not before us. We note, however, that at the time of the accident the No-Fault Act provided for PIP coverage "to pedestrians sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile." N.J.S.A. 39:6A-4. See New Jersey Mfrs. Ins. Co. v. Griffin, 253 N.J. Super. 173, 601 A.2d 261 (Law Div. 1991) (The Law Division interpreted the act to afford PIP coverage to a pedestrian who suffered personal injuries when he was struck by an insured stolen automobile.); Jackson v. Farrion, 261 N.J. Super. 481, 619 A.2d 268 (Law Div.), aff'd o.b., 261 N.J. Super. 408, 619 A.2d 232 (App.Div. 1992) (Although insurer had no obligation to provide liability coverage for stolen vehicle, it had an obligation to provide PIP benefits to a pedestrian injured by that same vehicle.).

Here, as in Griffin and Jackson, Johnson's status at the time he operated the insured automobile and struck Campbell is irrelevant. The key, especially in light of the policy considerations underlying the act, is that the insured automobile caused Campbell's bodily injuries.
[7] The JUA relies upon a repealed section of the Motor Vehicle Security-Responsibility Law, namely N.J.S.A. 39:6-46 (repealed by L. 1979, c. 169, § 5, effective August 9, 1979), which provided in pertinent part:

The [motor vehicle liability] policy shall:
(a) Designate, by explicit description or appropriate reference, all motor vehicles with respect to which coverage is intended to be granted thereby, and insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, against loss from liability imposed upon the insured or other person by law, for injury to or the death of a person....
There are numerous cases that have interpreted and applied the standard omnibus clause as then required by N.J.S.A. 39:6-46. See Matits, 33 N.J. at 496-497, 166 A.2d 345, where the Court adopted the "initial permission rule" by stating:
[I]f a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy.
See also Motor Club Fire & Cas. Co. v. New Jersey Mfrs. Ins. Co., 73 N.J. 425, 437, 375 A.2d 639, cert. denied, 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977) ("Only where the deviation from the use consented to amounts to `theft or the like' will coverage be precluded under the insured's policy."); Small v. Schuncke, 42 N.J. 407, 413, 201 A.2d 56 (1964) (Even if person had permission to use an automobile initially, subsequent theft or the like would preclude coverage under the initial permission rule.). American Home Assur. Co. v. Hartford Ins. Co., 190 N.J. Super. 477, 484, 464 A.2d 1128 (App.Div. 1983) ("For the omnibus provision to be effective there need only be permissive use."). These cases, and others like them, however, are distinguishable from the facts here because Yoon, the insured owner of the vehicle, never gave Johnson either express or implied permission initially to operate his automobile.
[8] Although involving personal jurisdiction, our recent decision in Glickman v. Anderson, 269 N.J. Super. 59, 634 A.2d 562 (App.Div. 1994) (slip opinion), also illustrates that New Jersey courts will not compel a non-resident owner of a stolen vehicle, which had been involved in an accident with a New Jersey plaintiff, to defend a suit here, absent any other contacts with this state by the non-resident, where the vehicle had been stolen and driven to this state without the knowledge or consent of the owner.